REED PERRON, apelante, *v.* CONSUELO CORRETJER, apelada.

*Número:* O-82-727 *Resuelto:* 30 de noviembre de 1982

*Sarah Torres Peralta* y *Fausto Ramos Quirós*, abogados del apelante; *Milagros Quesada Picó*, de Servicios Legales de Puerto Rico, y *Luis F. Abreu Elías*, abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Reed Perron apela la sentencia del Tribunal Superior, Sala de San Juan que desestimó su petición de hábeas corpus (núm. 82-4713). Solicitaba que se reconociera la jurisdicción exclusiva del Tribunal Superior de Nueva Jersey (*Chancery Division, Bergen County*) en el caso sobre divorcio núm. M-01377-82, *Perron* v. *Corretjer*, y la validez y vigencia de un decreto interlocutorio de dicho foro, fechado 21 de septiembre de 1982, que le concedía la custodia de dos hijas menores habidas en su matrimonio con Consuelo Corretjer Lee.

# I

Expongamos los hechos pertinentes y procesales que gobiernan la disposición del recurso. Reed Perron, psiquiatra de profesión, y la Sra. Consuelo Corretjer Lee contrajeron matrimonio el 17 de abril de 1971 en el estado de Nueva York. Desde esa unión han residido siempre en los Estados Unidos. Procrearon dos hijas, Catherine Sarah e Isabel Alexandra, nacidas el 26 de agosto de 1974 y 3 de julio de 1977, respectivamente. Salvo las visitas anuales de la señora Corretjer a sus familiares en Puerto Rico, su domicilio desde el matrimonio y el hogar permanente de las niñas ha estado ubicado en Ridgewood, Nueva Jersey.

El 19 de agosto de 1982 vino a la Isla, junto con las niñas, al hogar de sus progenitores, los esposos Juan A. Corretjer y Consuelo Lee. Lo que en apariencia era una visita de sólo dos semanas, debido a desavenencias maritales prevalecientes, afloró en la decisión firme de una separación conyugal y de establecerse definitivamente en Puerto Rico con la intención de fijar residencia en compañía de sus dos hijas pequeñas. El 3 de septiembre radicó en el Tribunal Superior de Puerto Rico, Sala de San Juan, una petición de custodia (caso civil núm. RF-82-4226). Expuso bajo juramento las serias discrepancias conyugales y circunstancias existentes, y solicitó que se prohibiera sacar de Puerto Rico a las niñas, y una pensión alimenticia de $2,000 mensuales. Expedido ese mismo día el emplazamiento, sin que mediara permiso previo del tribunal bajo la Regla 4.3(a) de Procedimiento Civil, una persona particular hizo entrega al señor Perron, en Nueva Jersey, de la demanda y demás documentos. Los autos reflejan que a esa fecha no se había adquirido jurisdicción sobre la persona del señor Perron, según decreto posterior de nulidad al emplazamiento original.[1] Aun así, el Tribunal Superior, el 17 de septiembre, le concedió la custodia provisional.

---

[1] Subsiguientemente fue válidamente emplazado el 15 de octubre de 1982.

El 9 de septiembre de 1982 el Sr. Reed Perron se trasladó a Puerto Rico. Fue informado de la acción de custodia radicada por su esposa. Previo asesoramiento de sus abogados, regresó a Nueva Jersey a gestionar allá el divorcio y la custodia. Evitó también así ser emplazado. El 10 de septiembre radicó demanda de divorcio y solicitó del Tribunal Superior de Nueva Jersey la custodia de las menores. Se fundó en declaraciones juradas suscritas por la doctora en psicología Ruth Lijtmaer y su esposo, el doctor en psiquiatría Julián Ferholt —amigos íntimos del señor Perron y la señora Corretjer— expositivas, en lo pertinente, de la calidad de padre afable y preocupado del señor Perron, en contraste con una alegada actitud de indiferencia hacia las niñas de parte de la señora Corretjer, motivada por su supuesto carácter depresivo, huraño, irritable, y de infelicidad. Se consignó, además, que la menor Isabel, debido al carácter de la señora Corretjer, ha manifestado problemas en su desarrollo normal. Que la niña ha sido evaluada por la psicoanalista en pediatría Dra. Salley Province, del Centro de Estudios de Niños de Yale, y estaba bajo supervisión especial en una escuela privada como parte de su tratamiento. En opinión de esos facultativos, el mejor bienestar de las niñas exige su regreso al medio familiar original bajo la custodia del señor Perron. En igual fecha, el Juez Hon. Harvey R. Sorkow emitió una orden para mostrar causa, fijando el 21 de septiembre para la comparecencia de la señora Corretjer. Fue notificada por correo certificado el día 16 de septiembre y personalmente el 17, esto es, cinco (5) y cuatro (4) días, respectivamente, antes de la vista fijada. Ella *pro se* compareció por escrito e impugnó la jurisdicción de ese tribunal, expuso su condición de penuria económica y que el señor Perron no había provisto alimentos. Solicitó a dicho foro que no ejerciera su jurisdicción a base de la pendencia en Puerto Rico del pleito de custodia por ella interpuesto, o en la alternativa, que pospusiera la vista, le concediera término para contratar a un abogado de

esa localidad y contestar, dispusiera una pensión alimenticia de $2,000 mensuales y paralizara los procedimientos hasta que el trámite en Puerto Rico finalizara.

El 21 de septiembre el Tribunal Superior de Nueva Jersey ejerció su jurisdicción y, en virtud de los documentos mencionados, ordenó a la señora Corretjer regresar a sus hijas a Nueva Jersey. También otorgó la custodia temporal al señor Perron, sin perjuicio de que la señora Corretjer la solicitara. Para hacer cumplir ese decreto presentó en el Tribunal Superior, Sala de San Juan, el hábeas corpus que nos ocupa. En su sentencia desestimatoria —luego de señalar que la petición del señor Perron no estaba jurada,(²) y que Puerto Rico tenía un interés legítimo en el bienestar de las menores— el tribunal a quo, apoyándose en *Marrero Reyes* v. *García Ramírez*, 105 D.P.R. 90 (1976), dictaminó que tenía jurisdicción concurrente con el estado de Nueva Jersey, pero que ejercía la suya: (1) por encontrarse aquí físicamente las menores; (2) por Perron haberse sometido a su jurisdicción al presentar la petición de hábeas corpus; (3) por haberse trasladado a Puerto Rico y haberse ausentado para evitar ser emplazado por consejo de sus abogados; (4) por regir en Nueva Jersey la Ley Uniforme sobre Custodia de Menores, 9 (U.L.A.) Sec. 1-28; (5) por ser aplicable la norma del bienestar de las menores (por estar las niñas a mitad del primer semestre escolar); (6) por estar calificado el tribunal para hacer una determinación razonable de cus-

---

(²) Conforme el Art. 470 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 1742, la "solicitud [de hábeas corpus] se hará a petición firmada por la persona a cuyo favor se hace *o por otra a nombre de aquélla*", y "ha de ser jurada por la persona que la haga". Hemos resuelto que si a la persona no le fuere fácil comunicarse con su abogado o existiere otra razón para no poder hacer personalmente la solicitud —expresadas tales razones o motivos—, puede ser formulada y jurada por su abogado. *Ex Parte Soldini*, 4 D.P.R. 168 (1903); *Ex Parte Cintrón*, 5 D.P.R. 90 (1904); *Ex parte Delgado*, 12 D.P.R. 269 (1907).

En el caso de autos la petición fue jurada por el abogado Fausto Ramos Quirós, y en el texto del *jurat* se consignó que el promovente Perron estaba físicamente fuera de Puerto Rico. En estas circunstancias estimamos cumplido el requisito al amparo de nuestra doctrina jurisprudencial.

todia; y (7) por carecer la señora Corretjer de medios económicos para trasladarse y litigar en los Estados Unidos.

El tribunal de instancia concluyó, además, que la madre no había violado las disposiciones del *Parental Kidnapping Prevention Act* (PKPA), 28 U.S.C. sec. 1738A, al estimar que no era un caso de secuestro "ya que el padre de las menores en todo momento ha tenido conocimiento de dónde se encuentran las menores. Tan es así que se ha comunicado por teléfono con la madre y vino a Puerto Rico a visitarlas". Finalmente resolvió que no venía obligado a "dar entera fe y crédito (*full faith & credit*) a la orden del Tribunal Superior de Nueva Jersey", por no ser dicha doctrina aplicable "a una determinación de custodia", y concluyó "que Puerto Rico asumió jurisdicción en el caso de custodia con anterioridad a que lo hiciere el Tribunal Superior de Nueva Jersey. Que el querellante, al igual que el Tribunal tenían conocimiento del pleito ya iniciado en esta jurisdicción. Que en el caso RF-82-4226 la Hon. Juez Edith Pardo de Vázquez ha emitido una orden fechada el 17 de septiembre de 1982 otorgándole la custodia provisional a la aquí querellada. Que este Tribunal en su poder de *parens patriae* mantendrá la jurisdicción ya ejercida en pos del bienestar de estas niñas, las cuales no deben ser trasladadas nuevamente. Sería perjudicial para su bienestar trasladarlas a Nueva Jersey sin haberse aún determinado finalmente a quién corresponderá la custodia, arriesgándolas a que tengan que sufrir un nuevo cambio de hogar. Este Tribunal no va a ser cómplice de un nuevo traslado. El mejor bienestar de estas menores nos inclina a que permanezcan en Puerto Rico y continúen asistiendo a la escuela aquí hasta tanto se dilucide el pleito de custodia".

"Puerto Rico no ha adoptado la Ley de Custodia Uniforme. Así lo demuestra el caso de *Fernández* v. *Rodríguez*, 97 Misc. 2d 353, 411 NYS2d 134 (1978), donde el Tribunal Supremo de Nueva York rehusó darle 'full faith & credit' (entera fe y crédito) a una sentencia sobre custodia de

Puerto Rico por razón de que en la Isla no se ha adoptado dicha Ley ni disposiciones similares." (Apéndice, págs. 193–194.)

## II

Ante nos, el apelante señor Perron reproduce varios planteamientos en abono de su contención. Descansan esencialmente sobre el supuesto de que el Poder Judicial del Estado Libre Asociado de Puerto Rico debe reconocer entera fe y crédito al decreto de custodia del 21 de septiembre, emitido en el caso M-01377-82 por el Tribunal Superior de Nueva Jersey, conforme el estatuto federal PKPA, por razón de las doctrinas de supremacía federal y de *preemption*. Por su parte, la apelada Corretjer en su comparecencia expone la tesis que encontró eco en la sala sentenciadora, en el sentido de que dicho foro tiene jurisdicción y la ejerció, que no es aplicable el PKPA y que el mejor bienestar de las menores es que residan en Puerto Rico. Enfatiza el desbalance económico entre ella y el señor Perron, que éste no ha aportado nada para la alimentación de las niñas desde que ella las trajo a Puerto Rico y su temor de que si regresan a Nueva Jersey no volverán jamás.

## III

La solución de esta controversia requiere una breve referencia al trasfondo histórico que tuvo ante sí el Congreso norteamericano al aprobar el PKPA, bautizado por algunos estudiosos como la "Ley Wallop" en orden a su promovente, el senador Malcolm Wallop.

Según el legajo congresional, su propósito primordial fue desalentar la práctica del "secuestro" de los hijos por parte de aquel progenitor que no había podido prevalecer en un pleito de custodia. La experiencia reflejaba que debido a la disponibilidad, en potencia, de otro foro judicial aceptar como meritorias las contenciones de la parte perdidosa, ofrecía la ventaja de litigar nuevamente lo ya adjudi-

cado. "La mayoría de los estados invocaban su jurisdicción en casos de custodia a base de la presencia física del menor en sus fronteras. Los tribunales defendían esta práctica al dogmáticamente aplicar la doctrina de *parens patriae* y la regla del mejor bienestar. Sin embargo, el tribunal que ejercía su jurisdicción descansando en estos conceptos meritorios, de hecho promovía el seleccionar foros (*forum shopping*) de parte del progenitor que secuestraba —un resultado anómalo." Lockett, *The Parental Kidnapping Prevention Act of 1980: Death Knell For "The Rule of Seize and Run"*, 12 Cum. L. Rev. 485, 488–489 (1981–82). Con el aumento dramático en divorcios, el cúmulo y abuso de este tipo de *modus operandi* y disputas trascendió de ser simplemente un asunto de interés local. Evolucionó a tan graves extremos que se convirtió en materia de interés tanto interestatal como internacional. El Congreso consideró que la seguridad, estabilidad y continuidad de las relaciones progénito-filiales eran parte integral del desarrollo de todo menor y que la práctica popularizada de "secuestro o retención de un menor" era detrimental a la consecución de esos postulados. "Los progenitores divorciados, ya motivados por su amor, necesidad o deseo de antagonizar al otro progenitor, compiten por el afecto y la tenencia del menor. Lamentablemente, de ordinario, ello produce una situación en que el único perdedor es el menor." W. Young, *Parental Child-Snatching: Out of a No-Man's Land of Law*, 13 St. Mary's L.J. 337, 338 (1981). Para frenar la práctica se legisló el PKPA, cuya característica medular es reconocerle "entera fe y crédito" a los decretos judiciales sobre custodia que cumplan con la ley, a través de un solo patrón jurisdiccional uniforme. Además dispuso el mecanismo y uso de un servicio para localizar al progenitor (*Federal Parent Locator Service*) y la aplicación de la Ley de Fugitivos Federales (*Federal Fugitive Felon Act*). R. M. Irani, *Parental Kidnapping: Can The Uniform Child Custody Jurisdiction Act and Federal Parental Kid-*

*napping Prevention Act of 1980 Effectively Deter It?*, 20 Duq. L. Rev. 43 (1981); Cleveland, *The Uniform Child Custody Jurisdiction Act and The Parental Kidnapping Prevention Act: Dual Response to Interstate Child Custody Problems*, 39 Wash. & Lee L. Rev. 149 (1982).

A tal efecto, esta pieza legislativa federal aspira a establecer un sistema nacional de interpretación judicial con los siguientes propósitos: localizar padres con hijos menores que se trasladan de una jurisdicción a otra en disputas conyugales; promover la cooperación entre los distintos tribunales estatales para que las determinaciones de custodia y visitas sean dictaminadas por aquel estado que pueda resolver el caso más satisfactoriamente para el bienestar de los menores; estimular y ampliar el intercambio de información y asistencia recíproca entre estados; facilitar la ejecución de tales decretos judiciales; desanimar la continuidad de controversias interestatales sobre custodia de menores en abono de una mayor estabilidad en el ambiente familiar y en la relación con los menores; evitar conflictos jurisdiccionales entre estados sobre la materia; y frenar los secuestros interestatales o la remoción unilateral de los menores con el propósito de obtener y afianzar decretos favorables de custodia.

■ La ley aplica expresamente a todos los estados de la Unión, el Distrito de Columbia, el Estado Libre Asociado de Puerto Rico y a algunos territorios. 28 U.S.C. sec. 1738A(b)(8). Contiene varias definiciones, de las cuales es pertinente la de *determinación de custodia (custody determination)* que se define como la "sentencia, decreto u otra orden de un tribunal, que dispone de quién es la custodia del menor o cuándo se le harán las visitas, e incluye las órdenes permanentes, *temporeras, iniciales,* y modificaciones". (Énfasis suplido.) También es importante el concepto de "Estado-residencia" (*home State*), que significa aquel estado donde un niño ha vivido con uno o ambos padres, o con un tutor, al menos por seis meses consecutivos

inmediatamente antes de la fecha en que se inicien los procedimientos. Al amparo de la ley, un decreto judicial sobre custodia de un menor solamente es compatible (*consistent*) con el estatuto, (1) si dicho foro tiene jurisdicción bajo sus leyes; y (2) si concurre una de cualesquiera circunstancias:

A. (i) ese es el Estado-residencia del menor a la fecha en que se inician los procedimientos, o

(ii) fue su Estado-residencia con seis meses de antelación a la fecha en que se iniciaron los procedimientos y el menor está ausente debido a que ha sido trasladado o retenido por uno de los padres litigantes, o por otra razón, y el promovente permanece en ese estado;

B. (i) surge que ningún otro estado tiene jurisdicción a base de las circunstancias, y

(ii) para el mejor bienestar del menor el tribunal de dicho estado asume jurisdicción debido a que: 1— el menor y sus padres, o aquél y uno de los litigantes tiene un contacto significativo con el Estado, más allá de la mera presencia física en el mismo; y 2— existe y está disponible en ese estado evidencia sustancial relativa al cuidado, protección, entrenamiento y relaciones personales presentes y futuras del menor;

C. el menor está físicamente presente en ese estado, y ha sido abandonado o existe una emergencia que requiera su protección porque ha recibido amenazas o ha estado expuesto a maltrato o abuso;

D. surge que ningún otro estado tiene jurisdicción según los criterios A, B, C y E; u otro estado ha declinado ejercitarla bajo el fundamento de que el estado cuya jurisdicción está en controversia es el foro más apropiado para determinar tal custodia y es en pro del menor que ese otro tribunal asume la jurisdicción; y

E. el tribunal tiene jurisdicción continua a base del inciso anterior.

 Se provee que la jurisdicción del tribunal del estado que haga la determinación de custodia, a tono con las disposiciones de la ley, continuará mientras subsistan las circunstancias apuntadas. *Se exige que se notifique adecuadamente y se dé razonable oportunidad a los litigantes antes de tomarse tal determinación.* Se reconoce que un tribunal tiene autoridad para modificar una determinación de custodia decretada por otro tribunal si: tiene jurisdicción y el otro tribunal no la posee o ha declinado ejercitarla. *A contrario sensu*, un tribunal no debe ejercitarla si está pendiente una determinación análoga en un tribunal de otro estado que ha intervenido, ajustándose y de manera compatible con la norma jurisdiccional del estatuto. Adicionalmente, se estimula a que los tribunales den prioridad a este tipo de litigación y hagan la concesión a la parte victoriosa de los gastos necesarios por viajes, abogado, investigaciones privadas, arancel de testigos y otros, si la otra parte le ha arrebatado al niño o le ha privado del derecho de visita sin autoridad para ello. Finalmente se autoriza a que los estados entren en acuerdo para obtener información y recobrar gastos del seguro social y otros extremos.

 La ley no es la panacea de todos los problemas que intenta resolver. Sin embargo, se reconoce que contribuirá a disminuir, y, en ocasiones eliminar, el serio dilema de jurisdicciones conflictivas en casos de custodia. R. M. Coombs, *Interstate Child Custody: Jurisdiction, Recognition, and Enforcement*, 66 Minn. L. Rev. 711 (1982). Si bien la efectividad del PKPA es evidente cuando ha mediado una orden previa al secuestro o la retención, nada impide que se obtenga una orden con posterioridad al secuestro o la retención si se cumple con los requisitos de Estado-residencia y debido proceso de ley. Young, *op. cit.*, pág. 352; Lockett, *op. cit.*, pág. 50.

No albergamos duda de que el estatuto federal es de aplicación en nuestra jurisdicción. Hemos visto cómo expresamente la Sec. 1738A(b)(8) incluye al Estado Libre Asociado de Puerto Rico. Su amplio alcance es una de las marcadas diferencias entre esta pieza congresional y la del *Uniform Child Custody Jurisdiction Act* (1968) (U.C.C.J.A.), que no fue adoptada nacionalmente, ni tampoco en Puerto Rico. Se intenta eliminar así jurisdicciones en que la carencia de eficacia jurídica de la ley anterior convertía en santuarios a los padres envueltos en este tipo de práctica. Young, *op. cit.*, pág. 345.

El apelante Perron argumenta que el PKPA, como norma federal, ocupó (*preempted*) totalmente la materia, que aquí tratamos. Por el resultado a que hemos llegado, no es necesario que abordemos *in extenso* la cuestión, cuyo alcance es objeto de discusión entre los estudiosos citados en esta ponencia. Basta señalar que existe un criterio definitivo de que el campo está ocupado en lo concerniente a la prohibición federal de que un tribunal modifique una determinación válida de custodia de otro estado o ejercite jurisdicción concurrente de un pleito ya comenzado. 28 U.S.C. sec. 1738A(g); Coombs, *op. cit.*, pág. 834.

## IV

Toda decisión en este género de controversia no puede hacerse depender de las simpatías naturales de los tribunales hacia una de las partes —*Nudelman* v. *Ferrer Bolívar*, 107 D.P.R. 495, 512 (1978)— como tampoco de temores, fundados o no, de que exclusivamente los foros judiciales puertorriqueños estamos capacitados para resolverlos con absoluta sabiduría, ecuanimidad y juridicidad. El mejor bienestar de los menores —que es la espina dorsal, a largo plazo contemplada en la legislación federal, local y en nuestra jurisprudencia, *Marrero Reyes*, supra— no puede estar sujeto a argumentaciones o preocupaciones individuales de los progenitores o sus familiares, basadas en

preferencias ideológicas en la relación existente entre Puerto Rico y Estados Unidos. Tampoco en el pronto acceso o primera llegada a la meta en una carrera que uno de los litigantes pueda lograr hacia determinado tribunal, o en la aprehensión de que el traslado temporal de los niños fuera de la jurisdicción entrañe el peligro potencial de que nunca volverán a la custodia de aquel progenitor que la tiene o legalmente debe ostentarla. Resolver estos casos a base de esos criterios personalistas y limitantes sería perpetuar precisamente lo que el PKPA intenta superar. Propiciaría que subsistieran a niveles intolerables las prácticas de secuestro o retención unilateral en detrimento de un sistema uniforme de administrar justicia en pro del bienestar de los menores. La movilidad de los puertorriqueños hacia los distintos estados de los Estados Unidos y viceversa, el incremento de matrimonios con personas de otras jurisdicciones y la ruptura de algunos, es un hecho innegable. Debemos, pues, sancionar, en la medida que sea consistente con el estatuto PKPA y con nuestro ordenamiento, aquellos decretos judiciales en aras de evitar una jungla o anarquía en la que el más poderoso, listo, solvente o mejor asesorado prevalezca a como dé lugar. Por ende, resolvemos que los tribunales de Puerto Rico deberán reconocer entera fe y crédito a los dictámenes de los distintos foros de Estados Unidos, en casos de custodia en que se cumpla con los criterios y requisitos estatuidos en el PKPA.

Establecida la anterior premisa, concentrémonos en si el decreto del Tribunal Superior de Nueva Jersey merece ese crédito jurídico. Lo primero que observamos es que el Estado-residencia de las niñas protagonistas de este proceso es y ha sido Nueva Jersey y no Puerto Rico. Los criterios establecidos en la ley así lo demuestran. Salvo las visitas aisladas a Puerto Rico, en compañía de la señora Corretjer, al hogar de los abuelos maternos, desde que contrajo matrimonio ella fundó allí su hogar conyugal, nacieron las niñas, comenzaron su educación y han vivido. Su reciente

decisión de trasladarse, divorciarse y residir en Puerto Rico no altera esa realidad. Esas circunstancias nos mueven a concluir que, al presente, el Tribunal Superior de Puerto Rico no posee todos los elementos de juicio necesarios para evaluar las circunstancias y factores ambientales, sociales y humanos para adjudicar de manera informada en quién debe recaer en última instancia la custodia. Ello exige la ponderación de factores tales como "la preferencia del menor, su sexo, edad y salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes. Oster, *Custody Proceedings: A Study of Vague and Indefinite Standards*, 5 J. Fam. L. 21, 22 (1965); Clark, *op. cit.*, 591 y ss.; Taylor, *Child Custody Problems in Illinois*, 521, 522, n. 3 (1975); Calloso, *Custody of the Child and the Uniform Marriage and Divorce Act*, 18 S. Dak. L. Rev. 551 (1973). Véanse: *Bermúdez v. Tribunal Superior*, 97 D.P.R. 825 (1969); *Castro v. Meléndez*, 82 D.P.R. 573 (1961); *Rodríguez v. Torres*, 80 D.P.R. 778 (1958). Ningún factor es de por sí decisivo. Hay que sopesarlos todos para juzgar de qué lado se inclina la balanza y al menos aproximarse al logro de la solución más justa en asunto de tan extrema dificultad." *Marrero Reyes*, supra, págs. 105–106.

En *Concepción v. Concepción*, 105 D.P.R. 929 (1977), que la apelada invoca a su favor, fue determinante que el marido no contendió la demanda de divorcio, fundada en la causal de separación por más de dos años, presentada por la madre en Puerto Rico, dentro del cual se adjudicaron a ella tanto la patria potestad como la custodia, con el beneficio de informes de trabajadores sociales de Nueva York y Puerto Rico, sin que se suscitara el factor de *residencia* ni se cuestionara la *jurisdicción* de la Sala de Bayamón que consideró

los méritos del caso, que no había examinado la Corte Suprema de Nueva York. De otra parte, en *Marrero Reyes*, supra, hicimos clara reserva del propósito de "evitar el secuestro unilateral de menores para fines de obtener un decreto de custodia". Pág. 100.

Aclarados estos extremos, advertimos que el estatuto federal exige que "antes de que se haga una determinación de custodia, se enviará a los litigantes una notificación adecuada, y se les dará una oportunidad razonable de ser oídos . . .". 28 U.S.C. sec. 1738A(e). Este requisito es parte del debido proceso de ley que obliga al foro judicial que intenta ejercer jurisdicción. Aparte de ese lenguaje, no está definido lo que constituye "notificación adecuada" y "oportunidad razonable". "Sobre lo que es razonable y prudente personas razonables y prudentes pueden discrepar." *Banchs* v. *Colón*, 89 D.P.R. 481, 497 (1963). Aun así se ha reconocido que ello entraña y conlleva una participación cabal en los procedimientos de custodia. Coombs, *op. cit.*, pág. 750. El tiempo que el progenitor necesita para prepararse y los medios disponibles son cruciales para esta determinación de razonabilidad. De igual modo, el carácter de urgencia verdadera del remedio del progenitor reclamante puede servir de base para acortar el término de notificación. Curiosamente, el *Uniform Child Custody Jurisdiction Act*, 9 U.L.A. Sec. 5, provee como regla general el término de diez (10) a veinte (20) días para la notificación a personas fuera de los límites territoriales del estado que entiende en la controversia, salvo emergencias. El estado de Nueva Jersey adoptó en sus leyes el término de veinte (20) días. N.J.S.A. 2A: 34–33. En definitiva, bajo la pieza legislativa federal, las leyes de Nueva Jersey y de Puerto Rico, si se ha cumplido o no con la norma del debido proceso de ley, es cuestión que depende de las circunstancias particulares de cada caso, aunque existen ciertos indicadores básicos —notificación y oportunidad— para medir si ello se satisface.

En el caso de autos, la señora Corretjer fue notificada por correo y en persona los días 16 y 17 de septiembre, respectivamente, para la vista en el foro de Nueva Jersey el 21 del mismo mes, apenas cinco (5) días después. Compareció documentalmente por propio derecho y *negó que el bienestar de las menores estuviera en peligro*. Cuestionó la jurisdicción, expuso su condición económica precaria, pidió fijación de alimentos y término de tiempo para contratar abogado y litigar. Al conceder al señor Perron la custodia provisional, el Tribunal de Nueva Jersey ese día rechazó implícitamente todas esas peticiones. Por lo visto las condicionó a que acatara su dictamen provisional. En esas circunstancias tenemos reservas fundadas en torno a si se ha cumplido con el debido proceso de ley. El término de cuatro (4) o cinco (5) días para litigar adecuadamente la custodia de las niñas, aun en esa etapa, no constituye una oportunidad real compatible con el criterio de razonabilidad consignado en el estatuto federal. *Cf. Allison* v. *Superior Court of Los Angeles Cty.*, 160 Cal. Rptr. 309, 312–313 (1979). Aunque reconocemos que hay áreas del derecho, en particular casos de custodia, en que pueden existir situaciones de urgencia que ·válidamente justifiquen sostener decretos interlocutorios sin audiencia previa a una parte, no se nos ha demostrado que éste sea el caso.(³) Así, de ordinario, para que una notificación sea constitucionalmente válida al amparo de la Decimocuarta Enmienda de la Constitución federal, la misma "debe brindar un tiempo razonable a aquellas partes interesadas para que comparezcan". *Mullane* v. *Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1950), en que se cita con aprobación a *Roller* v. *Holly*, 176 U.S. 398

---

(³) Así, entre las múltiples circunstancias visualizadas, el decreto *ex parte* de un tribunal, mediante el cual se prohíbe sacar a los niños fuera de jurisdicción cuando éstos se encuentran en un aeropuerto, próximos a abordar un avión. Véase la Ley Núm. 91 de 3 de junio de 1980, según enmendada, que establece un procedimiento de ley rápido para adjudicar controversias "en casos de custodia de menores". 32 L.P.R.A. sec. 2872(B).

(1900), que anuló una notificación que sólo concedía cinco (5) días a un litigante de fuera del estado para comparecer al procedimiento. Ciertamente el traslado inmediato a la jurisdicción de Nueva Jersey, los gastos que acarrea, la ausencia de medios para contratar asesoramiento legal y pericial son elementos imprescindibles que no pueden ser descartados en casos de esta naturaleza, particularmente cuando una de las partes está, por el control directo que posee de los medios económicos, en situación de obvia ventaja. (4) No hay constancia de peligro o urgencia real inmediata que justifique tan corto plazo.

Recapitulando, el decreto del Tribunal Superior de Nueva Jersey, sin que medien circunstancias especiales de urgencia, por la tardanza en la notificación *no cumple en esta etapa* con el requisito del debido proceso del PKPA y, por ende, no es acreedor a que se le confiera entera fe y crédito al amparo de dicho estatuto por los tribunales del país.

Por los fundamentos expuestos, *se modificará la sentencia del Tribunal Superior, Sala de San Juan, fechada 29 de octubre de 1982, a los fines de negar en esta etapa procesal la ejecución de la orden del Tribunal Superior de Nueva Jersey, del 21 de septiembre de 1982. Se devuelven los autos originales para cualesquiera trámites ulteriores de las partes, compatibles con esta opinión.* (5)

---

(4) Durante el trámite ante nos, la apelada señora Corretjer solicitó, en auxilio de nuestra jurisdicción, que impusiéramos al apelante Perron una pensión alimenticia de $2,000 mensuales, retroactiva al mes de agosto, y $100,000 en concepto de fianza de no-residente. En cuanto a la pensión alimenticia, es materia que no nos corresponde en jurisdicción original apelativa y fue por ella pedida en su comparecencia ante el Tribunal de Nueva Jersey. Sobre la fianza de no-residente, la Regla 69.6 de Procedimiento Civil vigente prescinde de ese requerimiento en casos de relaciones de familia, salvo aquellos meritorios. Hemos también de abstenernos en consideración a lo antes expuesto.

(5) Nada de lo aquí resuelto limita el que el señor Perron, previa observancia del debido proceso de ley a la luz de las circunstancias específicas presentes, gestione y obtenga un nuevo decreto del Tribunal Superior de Nueva Jersey, dentro del mismo procedimiento ya radicado —en el que se le haya dado adecuada notifi-

El Juez Presidente Señor Trías Monge se inhibió y el Juez Asociado Señor Dávila no intervino.

cación y oportunidad a la señora Corretjer para dilucidar sus planteamientos sobre la petición de custodia— y oportunamente, de serle favorable el mismo, sea ejecutado en Puerto Rico en trámite posterior en el caso de autos (82-4713) en virtud de un pleno reconocimiento de fe y crédito.

También cabe aclarar que la mera presencia de las niñas y el sólo transcurso del tiempo en Puerto Rico no otorga automáticamente al Tribunal Superior nuestro, jurisdicción para privar al estado de Nueva Jersey de su condición de Estado-residencia (*home State*), según lo define la ley federal, mientras esté activamente pendiente dicho proceso.

Finalmente, en su comparecencia la apelada censura y cuestiona como antiético el que el Hon. Juez Sorkow se comunicara con la juez de instancia Hon. Lolita Miranda en torno al caso. Dicho proceder está señalado en el estatuto como uno de los mecanismos pragmáticos para tratar de solventar los conflictos y obstáculos jurisdiccionales que la tesis de jurisdicción concurrente conlleva. N.J.S.A: 2A 34-34.