*965 TEXTO COMPLETO DE LA RESOLUCION
La parte peticionaria solicita la expedición del auto de certiorari y se revoque resolución dictada por el Tribunal de Primera Instancia, Sala Superior de Guayama, removiendo la custodia de un hijo menor de edad, de su madre domiciliada en el Estado de New Jersey. Arguye la demandada-recurrente que no se le puede privar de la custodia de su hijo por su incumplimiento de condiciones fijadas, por estipulación, por el Tribunal de Primera Instancia de Puerto Rico para poder trasladar al menor de edad de la Isla al Estado de New Jersey donde ella pretendía establecer su domicilio. No le asiste la razón a la peticionaria. Se expide el auto y se confirma la resolución recurrida.
I
El 6 de diciembre de 1993 el anterior Tribunal Superior de Puerto Rico, Sala de Guayama, dictó resolución y orden concediendo la custodia del menor de edad, Mikhail G. Cruz Covas, a su madre, Omayra G. Covas Galio. Estableció el Tribunal de Instancia amplias relaciones paterno filiales. Para esa época la señora Covas Galio estaba domiciliada en Puerto Rico. Anteriormente a esa época, estando la demandada-recurrente, señora Covas Galio, domiciliada en el Estado de New Jersey, la custodia del menor de edad la tenía su padre, Miguel R. Cruz Colón, quien estaba domiciliado en Puerto Rico.
Durante el mes de junio de 1994 la demandada-recurrente, señora Covas Galio, decidió trasladarse a vivir permanentemente en el Estado de New Jersey y solicitó permiso al Tribunal de Primera Instancia para llevarse consigo a su hijo. Se suscitaron varios incidentes procesales ante el Tribunal. El 15 de septiembre de 1994 la señora Covas Galio, aquí peticionaria, presentó ante el Tribunal de Primera Instancia propuesta sobre varias condiciones para trasladar al menor de edad de Puerto Rico a Estados Unidos. 
El 20 de septiembre de 1994 comparecieron ante el Tribunal de Primera Instancia los abogados de las partes y reunidos en cámara llegaron a los siguientes acuerdos:

"La señora Omayra G. Covas Galio se compromete a conseguir trabajo a tiempo completo en el Estado de New Jersey dentro de los próximos 45 días, de lo contrario, el menor regresará a Puerto Rico con su padre.

El menor estará con su padre durante las vacaciones de verano durante cinco semanas de las cuales una semana se relacionará con sus abuelos matemos.

Los pasajes del menor serán pagados por partes iguales por los padres.

Epoca de Navidad

Del 24 de diciembre de 1994 al 2 de enero de 1995, el menor estará con su padre, éste pagará los pasajes.

En Pascua Florida en años alternos, comenzando en 1995 estará con su padre y éste pagará los pasajes.

*966
Residencia

Cualquier cambio de residencia y teléfono, deberá ser notificado al padre, Sr. Miguel R. Cruz Colón.

La señora Covas deberá notificar al señor Cruz Covas (sic) el nombre y dirección de la escuela donde esté matriculado y las notas.

Enfermedad

La parte que tenga la custodia inmediata del menor notificará a la otra parte.

Relaciones Filiales (Tío Paterno)

El tío paterno y sus familiares se relacionará (sic) con el menor en fines de semana alternos de 6:00 de la tarde del viernes hasta el domingo a las 6:00 de la tarde.

El tio paterno recogerá al niño el viernes 7 de octubre de 1994, en Quakerbridge Mall a las 5:00 de la tarde y lo regresará al mismo lugar el domingo a las 6:00 de la tarde."
El Tribunal de Primera Instancia impartió su aprobación a dichos acuerdos y dictó resolución de conformidad, el 28 de septiembre de 1994. 
El 17 de octubre de 1994 el aquí recurrido, Miguel R. Cruz Colón, acudió al Tribunal de Primera Instancia para informar que a esa fecha la demandada-recurrente, señora Covas Galio, no había cumplido con nada de lo que había informado que haría ni con lo estipulado. El Tribunal de Primera Instancia citó a la aquí recurrente a comparecer el 25 de octubre de 1994 para mostrar causa. La señora Covas Galio no compareció, pero si lo hizo su abogado.
El 17 de noviembre de 1994, el señor Miguel R. Cruz Colón presentó ante el Tribunal de Primera Instancia una petición de hábeas corpus. Solicitó del Tribunal la expedición del auto y que se le ordenara a la señora Covas Galio su comparecencia en la fecha y hora que se señalara, trayendo consigo al menor para que luego del procedimiento previsto se entregara a su padre, señor Cruz Colón, en custodia provisional en lo que se dilucidaba la controversia sobre la custodia permanente, a la luz del comportamiento de la señora Covas Galio la cual alegadamente era contraria al bienestar del menor. 
El 22 de noviembre de 1994 el Tribunal de Primera Instancia expidió el auto de hábeas corpus y dictó orden a Omayra G. Covas Galio para que compareciera, trayendo consigo al menor Mikhail R. Cruz Covas, a la vista que en tomo a la petición de hábeas corpus habría de celebrarse el día 15 de diciembre de 1994, a las 9:00 de la mañana. El Tribunal apercibió a la señora Covas Galio que de no comparecer podría dictarse contra ella una orden de arresto por desacato y concederse el remedio solicitado por el señor Cruz Colón sin más citarle ni oírle. Dicha orden fue notificada a la señora Covas Galio a través de su abogado, Ledo. Cándido L. Cordero Pueyo. 
El 15 de diciembre de 1994 se celebró la vista sobre la petición de hábeas corpus. El señor Miguel R. Cruz Colón compareció, así como su representación legal, la licenciada Livia E. Rovira de Fuster. La señora Omayra Covas Galio no compareció, pero sí su representación legal, licenciados Cándido L. Cordero Pueyo y Alejandro Salgado Rivera. El Tribunal de Primera Instancia emitió resolución, con fecha del 16 de diciembre de 1994, encontrando probados los hechos alegados, ordenando que el menor Mikhail Cruz Covas fuera devuelto a la jurisdicción de Puerto Rico bajo la custodia provisional de su padre, señor Cruz Colón, y ordenando el arresto de la señora Covas Galio por desacato al Tribunal. Esa resolución fue diligenciada en el Estado de New Jersey de conformidad con lo dispuesto por el "Parental Kidnapping Prevention Act," 28 U.S.C. sec. 1738 et seq. El menor fue localizado y trasladado a Puerto Rico, bajo la custodia provisional de su padre.
El 20 de enero de 1995, la señora Omayra Covas Galio presentó ante el Tribunal de Primera Instancia escrito titulado "Moción para que se Celebre Vista y Reconsideración de Orden de *967 Privación de Custodia." El señor Miguel R. Cruz Colón presentó réplica a dicho escrito, el 3 de febrero de 1995. Se señaló vista para el 1ro. de marzo de 1995 y se ordenó un informe social de la Oficina de Servicios Sociales de Relaciones de Familia.
En dicha vista la señora Omayra Covas Galio alegó que la custodia había sido resuelta previamente por el Tribunal de Primera Instancia de Puerto Rico y que lo único que había para dilucidar era el asunto del desacato. Alegó a su vez que no había justificación en derecho para un cambio de custodia. Que aunque hubo estipulación de relaciones paterno filiales, la misma no tenía que ser obedecida por ser contraria a derecho, a la moral y las buenas costumbres. Alegó, además, que la madre por su condición de mujer era la persona idónea para tener la custodia. Por su parte el señor Miguel R. Cruz Colón alegó que existía justificación para un cambio de custodia fundamentado en el bienestar del menor. Adujo que las condiciones de vida del menor en Estados Unidos son muy desfavorables comparadas con las que tiene en Puerto Rico y, además, porque su madre impedía las relaciones paterno filiales manteniendo al menor secuestrado.
II
Es doctrina sentada en Puerto Rico que las determinaciones sobre custodia deben guiarse, principalmente, por el bienestar y los mejores intereses del menor. Rodríguez v. Gerena, 75 D.P.R. 900 (1954); Castro v. Meléndez, 82 D.P.R. 573 (1961); Marrero Reyes v. García Ramírez, 105 D.P.R. 90 (1976); Nudelman v. Ferrer Bolivar, 107 D.P.R. 495 (1978); Perron v. Corretjer, 113 D.P.R. 593 (1982) y Santana Medrano v. Acevedo Osorio, 116 D.P.R. 298 (1985). ¿Se guió el Tribunal de Primera Instancia, principalmente, por el bienestar y los mejores intereses del menor al determinar sobre la concesión de la custodia a favor del padre, Miguel R. Cruz Colón, en la resolución recurrida? Entendemos que así es. Veamos.
El Tribunal de Primera Instancia celebró una vista, a petición de la señora Omayra Covas Galio, el 15 de marzo de 1995 a través de la cual las partes tuvieron oportunidad de presentar prueba y ser oídas Ial respecto. El Tribunal de Primera Instancia tuvo ante sí dos informes preparados por la Trabajadora Social de la Oficina de Servicios Sociales de Relaciones de Familia del Tribunal. Ese Tribunal aquilató la prueba desfilada y adjudicó los hechos creídos. El Tribunal de Primera Instancia formuló en la resolución recurrida sendas determinaciones de hechos que reflejan el cuadro fáctico creído y determinado, al cual le fue aplicado las normas de derecho vigentes. 
La señora Omayra Covas Galio testificó ante el Tribunal de Primera Instancia que decidió irse a vivir a los Estados Unidos porque quería estar libre y romper vínculos anteriores con su ex-esposo, Miguel R. Cruz Colón, y la familia de éste. Indicó tener conocimiento de las estipulaciones contenidas en la resolución del 28 de septiembre de 1994 y haber participado en las reuniones donde se acordaron. Sin embargo, al llegar a New Jersey acudió al Tribunal de aquel Estado solicitando un cambio en las estipulaciones sobre relaciones paterno filiales, porque no estaba de acuerdo con las mismas. Las objeciones que alegó a las relaciones del menor con la familia paterna, según contenidas en las estipulaciones, no las indicó o alegó ante la Juez que presidió la vista para otorgarle el permiso para remover al menor de edad de nuestra jurisdicción.
La señora Covas Galio no informó su dirección al señor Cruz Colón cuando llegó a New Jersey como acordó ante el Tribunal, porque indicó temía le quitaran al niño. Tampoco informó el número telefónico de su residencia. No se empleó en el lugar dónde indicó iba a trabajar. Tampoco informó donde trabajaba o el hecho que no había conseguido trabajo. El niño no fue matriculado en la escuela que ella informó asistiría. No informó la escuela en que había sido matriculado. La señora Covas Galio no se comunicó con el padre del niño; tampoco le escribió.
La señora Covas Galio admitió haberle entregado la llave de la casa al menor de seis años de edad, para que entrara a la casa después de salir de la escuela. La Trabajadora Social indicó que el niño le informó que dormía en un sofá-cama en la sala de un apartamento de un cuarto. Le informó a esta funcionaría que tenía las llaves de la casa porque su mamá llegaba a su casa después que él. Ambos informes preparados por la Trabajadora Social de la Oficina de Servicios Sociales de Relaciones de Familia, indican que el padre está capacitado para atender al niño. El último de esos informes refleja que el niño tiene su habitación en la casa de su padre, que asiste a la escuela y el hogar cuenta con todo lo necesario. La Trabajadora Social no pudo evaluar la situación del niño en New Jersey por no *968 haber informe interagencial sobre las condiciones del niño mientras residió allá con su madre. No estuvo disponible la señora Covas Galio para brindar su versión.
Los abogados de lá señora Covas Galio indicaron al Tribunal que le notificaron a ella por carta de las vistas señaladas y las mismas fueron devueltas. Informaron que no tenían la dirección donde ella había decidido domiciliarse, así como tampoco el teléfono. Que le enviaron mensajes con la familia de ella que debía cumplir con lo estipulado ante el Tribunal.
La conducta de la señora Covas Galio denota su interés de obtener la custodia del niño y eventualmente el permiso del Tribunal de Primera Instancia de Puerto Rico para lograr su traslado al Estado de New Jersey. Para ello estipuló con el padre del niño unas condiciones que fueron adoptadas por el Tribunal en su resolución del 28 de septiembre de 1994, con la clara intención de no cumplirlas buscando la jurisdicción del Tribunal Superior de ese Estado para tratar de incumplir con la obligación que había contraído con el Tribunal de Primera Instancia de Puerto Rico de conformidad a la determinación que había realizado ese Tribunal sobre cuál era el mejor bienestar y conveniencia del menor de edad. Intentó romper vínculos con el padre del niño y su familia. Todo parece indicar que la señora Covas Galio quería evitar'Contacto del padre con su hijo. Resulta evidente que intentó evitar que el Tribunal de Primera Instancia de Puerto Rico pudiera realizar una evaluación de las condiciones del menor de edad en ocasión de éste residir con su madre en el Estado de New Jersey y comparar esa evaluación con las condiciones de vida de éste cuando ha residido en Puerto Rico. 
La señora Covas Galio trató de evadir la jurisdicción del Tribunal de Primera Instancia de Puerto Rico para lograr la jurisdicción del Tribunal Superior del Estado de New Jersey. El mero transcurso del tiempo podía dar lugar a ello.
Bajo el "Parental Kidnapping Prevention Act.", supra, un tribunal estatal que dictamina sobre la custodia de un menor de edad confiriéndola a la madre, no tiene jurisdicción para modificar el decreto de custodia si el menor de edad lleva residiendo junto a su madre en otro estado por mucho tiempo. Bajo tales circunstancias el Estado de New Jersey, donde residía el menor de edad con su madre, no hubiera estado obligado a otorgarle entera fe y crédito a cualquier decreto de modificación de custodia del Tribunal de Primera de Instancia de Puerto Rico, pues hubiera faltado el esencial elemento de jurisdicción. 
El Tribunal de Primera Instancia de Puerto Rico entendió que las condiciones de vida del niño junto a su madre en el Estado de New Jersey, no reflejan la estabilidad necesaria y no eran las mejores. En cambio, en Puerto Rico junto a su padre disfruta de esa estabilidad y de las atenciones necesarias. Puerto Rico es el foro con mayores contactos con el menor para hacer tal determinación.
El derecho de un padre o madre no custodio a mantener relaciones con sus hijos es de naturaleza personal y familiar, de contenido afectivo. Se refiere al derecho que le corresponde naturalmente al padre o la madre para comunicarse y relacionarse con aquellos hijos que por resolución judicial han sido confiados a la custodia del otro cónyuge. Ese derecho no es mera derivación del bienestar del niño, sino también de derechos fundamentales que nacen de la paternidad, de nociones de libertad y justicia que una sociedad sujeta a limitaciones constitucionales no puede ignorar del todo. Sterzinger v. Ramírez, 116 D.P.R. 762 (1985).
Un tribunal para adjudicar de manera informada en quién debe recaer en última instancia la custodia de un menor, tiene que ponderar los siguientes factores: la preferencia del menor, su sexo y salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor del hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia, y la salud psíquica de todas las partes. Ningún factor es de por sí decisivo, hay que sopesarlos todos para juzgar de qué lado se inclina la balanza y al menos aproximarse al logro de la solución más justa en asunto de tan extrema dificultad. Perron v. Corretjer, 113 D.P.R. 593 (1982).
Entendemos que el Tribunal de Primera Instancia realizó su determinación en forma adecuadamente informada. Le concedió la oportunidad a ambas partes de ser escuchadas y presentar *969 prueba en apoyo de su posición. De las determinaciones de hechos contenidas en la resolución recurrida, se desprende claramente el ánimo del Tribunal de Primera Instancia de Puerto Rico en su razón de decidir.
Es doctrina general que el tribunal de apelación no modificará la determinación de un tribunal sobre la custodia de hijos menores, a no ser que tal determinación se deba a un claro abuso de discreción. El Tribunal de Primera Instancia realizó, en su determinación contenida en la resolución recurrida, un sano uso de su discreción, persiguiendo el bienestar y conveniencia del menor de edad. Una decisión previa adjudicándole la custodia del menor de edad a su madre no es eterna. Si las circunstancias y condiciones bajo las cuales se concedió originalmente esa custodia cambian y si ello se justifica, atendiendo el bienestar y conveniencia del menor, la decisión puede reexaminarse oportunamente a petición de parte. 
ni
Por los fundamentos antes expuestos, se expide el auto y procedemos a confirmar la resolución recurrida.
Así lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.
María de la C. González Cruz
Secretaria General
ESCOLIOS 95 DTA 247
1. Alrededor de seis (6) meses después de concederle la custodia de su menor hijo.
2. Apéndice IV, páginas 19 y 20, de la petición de certiorari.
3. Apéndice V, páginas 21 y 22, de la petición de certiorari.
4. Apéndice IX, páginas 27-30, de la petición de certiorari.
5. Apéndice X, páginas 31-33, de la petición de certiorari.
6. El primero preparado para la celebración de la vista que dio lugar a la resolución dictada el 6 de diciembre de 1993 y el segundo preparado para la celebración de la vista que dio lugar a la resolución recurrida, dictada el 25 de abril de 1995.
7. Apéndice II, páginas 5-7, de la petición de certiorari.
8. Existe ante el registro (récord) del Tribunal de Primera Instancia de Puerto Rico, así como de los informes rendidos por la Trabajadora Social de la Oficina de Servicios Sociales de Relaciones de Familia, amplia información sobre el cuido recibido por el menor de edad bajo la custodia de su padre y de su madre, individualmente, en ocasión de residir en Puerto Rico. El menor de edad ha residido gran parte de su vida en la Isla.
9. Parental Kidnapping Act, 28 U.S.C. sec. 1738 A(c).
10. Véase Ortega v. Morales Ortega, 92 J.T.S. 135, opinión del 21 de octubre de 1992.
11. Rodríguez v. Gerena, 75 D.P.R. 900 (1954).
12. Centeno Alicea v. Ortiz, 105 D.P.R. 523 (1977).