# 99 DTA 199

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL II-BAYAMON**
**PANEL II**

ISSA NAVARRO FUKUSHIMA T/C/C ISSA BAZSA
Peticionaria

v.

CSABA BAZSA
Recurrido

Núm. KLCE-99-00552

San Juan, Puerto Rico, a 8 de junio de 1999

Panel integrado por su Presidente, el Juez Gierbolini,
el Juez Cordero y la Jueza Hernández Torres

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Atendida la *"Moción Solicitando Orden Provisional en Auxilio de Jurisdicción"* presentada el 3 de junio de 1999 por la parte peticionaria, Issa Navarro Fukushima t/c/c Issa Bazsa, se declara la misma Sin Lugar. En igual forma, denegamos expedir el auto de *certiorari* solicitado.

### I

La decisión de paralizar el efecto de una sentencia u orden de un tribunal o de una agencia mediante auxilio de jurisdicción decretando o denegando la paralización de los procedimientos, recae en la sana discreción del tribunal que debe guiarse por los siguientes criterios:

*"(a) que el peticionario presente un caso fuerte de probabilidad, de prevalecer en los méritos de la apelación;*

*(b) que demuestre que a menos que se detenga la ejecución, sufrirá daño irreparable;*

*(c) que ningún daño substancial se causará a las demás partes interesadas; y*

*(d) que la suspensión de la sentencia no perjudica el interés público."*

*Marrero Rivera v. Dolz Sánchez,* \_\_\_ D.P.R. \_\_\_ (1996), **96 J.T.S. 151**, a las págs. 352-353; *Asociación de Maestros de Puerto Rico v. Hon. José Arsenio Torres y Otros,* \_\_\_ D.P.R. \_\_\_ (1994), **94 J.T.S. 108,** pág. 59, voto explicativo de la Jueza Naveira de Rodón; *Peña v. Federación de Esgrima de P.R.,* 108 D.P.R. 147, 154, 155 (1978).

La moción en auxilio de jurisdicción en el presente caso deja de cumplir con los estándares y requisitos señalados en el caso de *Asociación de Maestros de Puerto Rico, supra.* No existe la probabilidad de la que peticionaria sufra daños irreparables, tales como se define ese término en el caso de *Misión Industrial de P.R. v. Junta de Planificación,* \_\_\_ D.P.R. \_\_\_ (21 de marzo de 1997.) **97 J.T.S. 34,** a la pág. 732. La peticionaria tampoco ha presentado ante nos un caso de probabilidad alguna de prevalecer en su súplica al nivel apelativo, razones que obligan que este foro no paralice los procedimientos ante el Tribunal de Primera Instancia. En consecuencia, es obvio que el emitir una orden paralizando los procedimientos ante el foro recurrido, sería totalmente inapropiado en este caso. Como regla general, ausente de circunstancias extraordinarias y de verdadera urgencia, este Tribunal no emitirá ningún remedio provisional sin habérsele notificado primero a la parte adversa y darle una oportunidad a ésta de presentar su posición. *Rivera Rodríguez & Co. v. Stowell Taylor,* \_\_\_ D.P.R. \_\_\_ (30 julio 93), **93 J.T.S. 111.**

### II

En cuanto a la Petición de *Certiorari,* la peticionaria alega que fue error del Tribunal de Primera Instancia: (1) no asumir jurisdicción sobre el caso antes de emplazar a la parte demandada y (2) dictaminar que la Ley Interestatal Uniforme de Alimentos entre Parientes *("LIUAP"),* 8 L.P.R.A. 541, *et. seq.* (Supl. 1998), aplica al caso.

La resolución del foro recurrido es totalmente correcta; denegamos expedir el auto de *certiorari.* Veamos.

La peticionaria (en adelante *"la ex-esposa"*) y el recurrido (en adelante *"el ex-marido"*) se casaron en el 1990 en Miami, Florida. Como producto del matrimonio, nació en Florida en el año 1991 el hijo de ambos CSABA ZOLTAM BAZSA. El 19 de diciembre de 1995, el Tribunal en Florida, con jurisdicción sobre las partes

y la materia, emitió el decreto de divorcio luego de las partes haberle sometido una estipulación sobre acuerdos de transacción de la disputa matrimonial. En dicho acuerdo, entre otras cosas, las partes llegaron a una transacción en cuanto a las disputas sobre los bienes, alimentos, custodia y los derechos de visitas con el menor...

Además, específicamente acordaron:

*"26. RELOCATION:"*

*"..., in the event Husband resides and is employed outside of South Florida, the wife shall be entitled to relocate with the minor child so long as the basis for said relocation is consistent with Florida law."*

En cuanto al derecho de tener al menor durante los veranos, las partes estipularon:

*"28. VISITATION:"*

*"b. The summer vacation shall be equally divided along with Spring and Christmas breaks. The party having the first half of the Summer in the even years shall allow the other to have the first half of the summer the following years."*

Dicho en otra forma, las partes estipularon que se alternarían la mitad del verano en que el menor podría estar con uno y el otro.

Finalmente, las partes estipularon:

*"3.3 SITUS:"*

*"This agreement shall be construed and governed in accordance with the laws of the State of Florida and venue for any issue arising between the parties shall be Dade County, Florida."*

En vista del extenso y detallado acuerdo, el Tribunal de Florida aceptó el mismo como uno justo y razonable e incorporó por referencia el mismo como parte de su sentencia. Además, ordenó a las partes a cumplir con el acuerdo y específicamente decretó como parte de su sentencia:

*"e. This Court retains jurisdiction to enter, modify or amend any orders necessary to effectuant this agreement."*

\*\*\*

*"d. This Court retains jurisdiction to enforce the terms of this Final Judgment."*

El 13 de noviembre de 1998, la ex-esposa presentó demanda ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, solicitando modificación de Relaciones Paterno-filiales y Alimentos. En la misma, entre otras cosas, la ex-esposa alegó: que desde el 17 de octubre de 1997 vive con su hijo menor en Guaynabo, Puerto Rico por haber trasladado su domicilio; que el ex-marido trasladó su *"residencia y domicilio"* para Moscú, Rusia, ya que éste es un ejecutivo de la empresa Schering Plough, U.S.A.; que el foro *a quo* tiene jurisdicción bajo las disposiciones del Parental Kidnapping Prevention Act *("PKPA")*, 28 U.S.C.A. sec. 1738(1), para atender el asunto, ya que ella y el menor han vivido en Puerto Rico por un período de más de seis (6) meses; que el ex-marido había solicitado llevarse al menor *"a Rusia"* para vacaciones , ■ y al negarle la entrega del menor

éste recurrió al Tribunal de Florida reclamando sus derechos bajo la sentencia de dicho foro; que ella había levantado la falta de jurisdicción del Tribunal de Florida y que solicitaba un aumento de pensión alimentaria. La ex-esposa solicitó una orden para emplazar al ex-esposo mediante edicto, y el Tribunal de Primera Instancia primero ordenó a la ex-esposa agotar el procedimiento señalado en la Regla 4.3 (a), Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, y que viera el caso de *Aponte v. Barbosa Dieppa,* ___ D.P.R. ___ (24 julio 98), **98 J. T.S. 105,** en cuanto a la jurisdicción y procedencia a seguir.

La ex-esposa, inconforme, nuevamente solicitó del tribunal recurrido una orden para emplazar por edicto, ya que no podía usar un alguacil o un abogado según indicado por la Regla 4.3 (a), debido a la dificultad del idioma y desconocimiento de abogados y alguaciles en Rusia.

El Tribunal de Primera Instancia, en una resolución excelentemente fundamentada, ordenó: (1) que era imprescindible notificarle al ex-esposo copia de la demanda a tenor con la Regla 4.5, Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, (emplazamiento por edictos), cuya Regla la ex-esposa debería darle fiel cumplimiento; (2) que se debería traducir la demanda y la resolución del tribunal de español al inglés, notificándole copia de la misma al ex-esposo en su última dirección conocida en Rusia y a la dirección de su trabajo; y (3) también notificarle al Tribunal de Florida copia de la resolución traducida al inglés.

## III
En síntesis, el primer argumento ante nos de la ex-esposa es que las disposiciones de la LIUAP no son de aplicación porque sus alegaciones están regidas por los preceptos del estatuto PKPA, y no por la LIUAP. Es prematuro traer ante nuestra consideración tal creativa alegación. Este Tribunal no debe hacer pronunciamiento al respecto hasta que el ex-esposo se presente ante el Tribunal de Primera Instancia, ya sea mediante comparecencia especial o sometiéndose a la jurisdicción *in personam* del tribunal y haga todas las alegaciones a su favor que él estime prudente. ∎

El segundo y último argumento ante nos de la ex-esposa es que como ella le solicitó al Tribunal de Primera Instancia, Sala Superior de Bayamón, aumento en la pensión alimentaria antes de emplazar al ex-esposo (cosa que el foro *a quo* se negó hacer hasta tanto se determinara si tenía jurisdicción sobre la materia) fue error del tribunal recurrido no asumir jurisdicción sobre el caso. Tampoco le asiste la razón.

*"Para que un tribunal pueda modificar la orden de pensión alimentaria para un menor emitida por el tribunal de otro estado, el estado que pretende la modificación tiene que tener jurisdicción personal sobre las partes y cumplir con los requisitos establecidos en el Artículo 6 de la ley. Véase, Uniform Interstate Family Support Act, 9 U.L.A. sec. 205, Comentarios en la pág. 286 (Supl. 1997)."*

*Aponte v. Barbosa Dieppa, supra,* a la pág. 19.

Además, salvo en casos de suma urgencia (e.g., un caso de custodia donde un padre o madre trata de abordar un avión o un barco para sacar al menor fuera de Puerto Rico sin el consentimiento del otro procreador) no se debe emitir una orden a petición *ex-parte* sin darle notificación y tiempo razonable a la parte contraria para comparecer. De no ser así, la orden *ex-parte* no sería constitucionalmente válida al amparo de la Decimocuarta Enmienda de la Constitución Federal, *Perron v. Corretjer,* 113 D.P.R. 593, 608-609 (1982); y se le privaría a una parte de su derecho al debido proceso de ley, aun bajo el PKPA. *Id.*

## IV
Por los fundamentos expuestos, denegamos la expedición del auto de *certiorari.*

Notifíquese inmediatamente al Tribunal de Primera Instancia, Sala Superior de Bayamón, y a las partes por la vía ordinaria.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 199

**1.** En una carta a su ex-esposa, el ex-marido le indica que llevaría al menor durante sus vacaciones al *"Club Med"* en Europa, y para ver a su familia en el Lago Balaton en Hungría, lugar donde iba a estar su familia y luego para Austria. Nada dice de ir a Rusia.

**2.** Este Tribunal esta muy consciente que el mismo asunto sobre el derecho del menor de visitar a su padre está pendiente de resolución ante el Tribunal de Florida desde el 7 de julio de 1998. Es decir, más de cuatro (4) meses antes de radicarse la demanda en el caso ante nos.