# 2006 DTA 63

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VIII**

MARÍA MERCEDES GONZALEZ RAMOS
Demandante-Apelada

v.

EDGAR MIGUEL CHICO MANGUAL
Demandado-Apelante

Núm. KLCE-2006-00209

San Juan, Puerto Rico, a 29 de marzo de 2006

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Pabón Charneco

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En la causa del epígrafe, el peticionario, Sr. Edgar Miguel Chico Mangual (Sr. Chico Mangual), solicita que revisemos la Resolución y Orden emitida el 10 de enero de 2006 y archivada en autos copia de su notificación el 23 de mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). En tal dictamen, el TPI asumió jurisdicción para entender sólo en la determinación inicial de custodia del menor William Michael Chico González y declinó asumir jurisdicción sobre la determinación original de custodia de la menor Francesca Chico González y sobre las causas de divorcio, división de bienes y pensión *pendente lite* presentadas por la recurrida.

### Hechos

Los aquí litigantes, Sr. Chico Mangual y Sra. María M. González Ramos (Sra. González) contrajeron matrimonio el 26 de febrero de 1988, en Cataño, Puerto Rico. Posteriormente, establecieron su domicilio conyugal en el estado de Virginia, EE.UU. En dicha unión procrearon dos hijos de nombres William Michael y Francesca Chico González, quienes actualmente cuentan con 14 y 15 años de edad, respectivamente.

Allá para el 23 de junio de 2004, la Sra. González se trasladó a Puerto Rico en unión a sus dos hijos. Poco más tarde (agosto de 2004), la Sra. González decidió quedarse a residir en Puerto Rico junto a su hijo William Michael, y regresó a su hija menor Francesca a vivir con su padre al estado de Virginia, para que continuara allí sus estudios, puesto que no dominaba el castellano y perdería el año escolar en Puerto Rico.

El 13 de mayo de 2005, el Sr. Chico Mangual, todavía residente del estado de Virginia, presentó ante el Tribunal de Circuito de dicho estado para la Ciudad de Virginia Beach (Tribunal de Virginia), demanda ("*Bill of Complaint*" CH05-1484) de divorcio contra la recurrida. Alegó estar separado de la Sra. González desde el 4 de junio de 2004 y solicitó, entre otros asuntos, la custodia temporera y permanente de sus dos hijos.

El 1 de junio de 2005, la Sra. González fue emplazada y el 21 de junio de 2005 compareció por derecho propio mediante moción ante el Tribunal de Virginia e hizo constar que no se estaba sometiendo a la jurisdicción del tribunal. Señaló que el litigio presentaba controversias jurisdiccionales, así como de hechos y derecho por lo que solicitó prórroga para presentar alegación responsiva. Atendida la petición, el tribunal de Virginia concedió a la Sra. González prórroga, a vencer el 22 de julio de 2005, para contestar la demanda de divorcio.

Posteriormente (18 de julio de 2005), la Sra. González compareció nuevamente por derecho propio y repitió que no se sometía a la jurisdicción del Tribunal de Virginia. Solicitó, en síntesis, que el Tribunal de Virginia renunciara a su jurisdicción a favor de los tribunales de Puerto Rico o, en su defecto, concediera una extensión de término para contestar la demanda y el pliego de interrogatorio presentado por el Sr. Chico Mangual.

Entretanto, el 24 de junio de 2005, la Sra. González presentó ante el TPI demanda de divorcio contra el Sr. Chico Mangual (DDI2005-1540) en la que solicitó, entre otros remedios, la custodia de ambos hijos. El 20 de julio de 2005, el Sr. Chico Mangual fue emplazado en Virginia, EE. UU.

Luego de varios incidentes procesales no necesario aquí pormenorizar, el 25 de julio de 2005, el Tribunal de Virginia emitió una orden en la que, entre otros remedios, retuvo jurisdicción sobre la controversia ante su consideración, decretó la custodia compartida de los menores y ordenó que el Sr. Chico Mangual tuviera derecho de visitas con su hijo William Michael en EE.UU. desde el 25 de agosto de 2005 hasta el 4 de septiembre de 2005.

El 22 de agosto de 2005, la Sra. González presentó moción ante el TPI en la que hizo constar que el tribunal de Virginia había ordenado visitas entre su hijo William Michael y su padre, Sr. Chico Mangual. Alegó que su hijo llevaba residiendo en Puerto Rico desde el 23 de junio de 2004 y solicitó orden para que el menor no fuese removido de nuestra jurisdicción.

El 29 de agosto de 2005, el Sr. Chico Mangual compareció, sin someterse a la jurisdicción, y solicitó del TPI se abstuviera de ejercer jurisdicción en la causa de epígrafe. Expuso, en síntesis, que el Tribunal de Virginia ya ejercía jurisdicción sobre los aquí litigantes respecto a la causa de divorcio y los asuntos relativos a los menores, con anterioridad a la fecha en que la Sra. González instó la demanda de divorcio ante el TPI.

En vista celebrada el 9 de septiembre de 2005, en corte abierta, el TPI determinó declinar ejercer jurisdicción para entender en la demanda presentada por la Sra. González y ordenó el archivo del caso. Dicha determinación no fue notificada a los litigantes ni al Tribunal de Virginia.

Ese mismo día, 9 de septiembre de 2005, el Tribunal de Virginia emitió una orden *pendente lite* en la que, entre otros remedios, concedió al Sr. Chico Mangual la custodia legal y física de sus dos hijos. En vista de lo anterior, el 21 de septiembre de 2005, el Sr. Chico Mangual presentó ante el TPI una solicitud para que se le diera entera fe y crédito al decreto del Tribunal de Virginia. El 29 de septiembre de 2005, la Sra. González presentó oposición ante el TPI.

El 7 de octubre de 2005, notificada el 13 de mismo mes y año, el TPI dictó Orden en la que dejó en suspenso o paralizó su anterior determinación emitida en corte abierta el 9 de septiembre de 2005, mediante la cual el hermano foro de instancia declinaba asumir jurisdicción en el caso.

Tras varios trámites procesales, que incluyeron la celebración de una vista entre las partes, el 10 de enero de 2006, el TPI emitió Resolución y Orden en la que denegó la solicitud del Sr. Chico Mangual y por tanto no otorgó entera fe y crédito al decreto provisional de custodia dictado por el Tribunal de Virginia. Concluyó que el Tribunal de Virginia no tenía jurisdicción para emitir tal determinación, porque al momento en que el Sr. Chico Mangual presentó la demanda de divorcio y custodia en Virginia, el estado de residencia del menor William Michael y de su madre era Puerto Rico y no el estado de Virginia. En vista de lo anterior, el TPI asumió jurisdicción **sólo** para entender en la determinación inicial de custodia relativo al menor William Michael.

No obstante, (1) el TPI declinó ejercer jurisdicción en cuanto a la determinación inicial de custodia respecto a la menor Francesca, al concluir que Virginia era su estado de residencia, y (2) también rehusó asumir jurisdicción sobre la demanda de divorcio presentada por la Sra. González, puesto que el Sr. Chico Mangual había radicado previamente la acción de divorcio ante el foro de Virginia.

No conforme, el Sr. Chico Mangual acude vía la petición de *Certiorari* del epígrafe e imputa al foro de instancia incidir de la siguiente forma:

*"Primer señalamiento de error:*

*ERRO EL TPI AL NEGARSE A DECLARARSE SIN JURISDICCIÓN EN UN CASO CLARO DONDE YA UN TRIBUNAL DE UN ESTADO HABIA ASUMIDO JURISDICCIÓN **VALIDA** SOBRE LAS PARTES Y SOBRE LA MATERIA, IGNORANDO EL PRINCIPIO DE QUE NO PUEDEN HABER DOS TRIBUNALES EJERCIENDO JURISDICCION SOBRE UN MISMO CASO A LA VEZ. (Subrayado en el original.)*

*Segundo señalamiento de error:*

*ERRO EL TPI AL NEGARSE A DAR ENTERA FE Y CREDITO AL DECRETO DE CUSTODIA DEL ESTADO DE VIRGINIA, DECRETO OTORGADO POR UN TRIBUNAL CON JURISDICCIÓN VALIDA SOBRE LA MATERIA Y LAS PARTES."*

La Sra. González ha comparecido en autos mediante *"Moción en Oposición a que se Expida el Auto"* con fecha del 27 de febrero de 2006. El asunto está sometido y debemos disponer.

**Exposición y Análisis**

Por estar íntimamente relacionados, discutiremos conjuntamente los señalamientos.

## I

La movilidad ciudadana, inobservancia de la cláusula de entera fe y crédito de la Constitución de los Estados Unidos respecto a los decretos de custodia, así como la falta de guías uniformes que resolvieran los conflictos jurisdiccionales que afloraban, desembocó en el trasiego interestadual de menores por parte de sus padres o familiares, con el objetivo de obtener determinaciones de custodia favorables a sus intereses.

Esta situación provocó que en 1968 la Conferencia Nacional de Comisionados para uniformar leyes estatales y el American Bar Association aprobaran la *Uniform Child-Custody Jurisdiction Act,* 9 U.L.A. pág. 270 *et. seq.* (UCCJA). Su objetivo principal fue establecer normas uniformes con las cuales un estado pudiera determinar si poseía jurisdicción para entender sobre la materia en causas de custodia. Asimismo, la UCCJA impuso a cada estado la obligación de reconocer y darle validez a las determinaciones de custodia emitidas por otros estados.

Sin embargo, la UCCJA no resultó ser la panacea para solucionar la inestabilidad y serio trastorno social que provocan los casos de custodia de menores enmarcados en tales traslados acomodaticios. Aunque todos los

estados adoptaron el UCCJA, muchos promulgaron sus propias versiones de dicha legislación modelo, lo que dio paso a una diversidad de interpretaciones por parte de los tribunales estatales que aumentaron exponencialmente las ya ambiguas e inconsistentes disposiciones del UCCJA, específicamente las relativas a la jurisdicción del foro judicial. ■ Por ello, el propósito rector de dicha legislación, de evitar decretos de custodia conflictivos, no se alcanzó como se esperaba. Véase, *Thompson v. Thompson*, 108 S. Ct. 513, 517 (1978).

Ante este sombrío y doloroso panorama, en 1980, el Congreso de Estados Unidos aprobó el *Parental Kidnapping Prevention Act* (PKPA), 28 USC § 1738A, con el objetivo primordial de prevenir la lucha por la competencia y evitar el serio conflicto interjurisdiccional que sólo agravaba el triste predicamento de divorcio y custodia de la prole, para promover la cooperación entre los distintos tribunales estatales y así facilitar el cumplimiento con las determinaciones de custodia sobre menores. El PKPA ordena que se le reconozca entera fe y crédito a las determinaciones de custodia de otros estados, cuando éstas se hayan emitido conforme a las disposiciones del PKPA. 28 USC § 1738A(a). Por disposición expresa, el PKPA aplica a Puerto Rico, 28 USC § 1738A (b) (8), y así lo reconoció nuestro más alto foro en *Perron v. Corretjer*, 113 DPR 593 (1982).

Un estado emitirá un decreto de custodia consistente con el PKPA sólo: 1) si dicho foro tiene jurisdicción bajo su legislación, y 2) si concurre una de las siguientes condiciones:

"*A. Ese estado (i) es el estado de residencia del menor a la fecha en que comenzaron los procedimientos, o (ii) ha sido el estado de residencia del menor seis meses antes de la fecha en que comenzaron los procedimientos y el menor se encuentra fuera del estado porque ha sido trasladado o retenido por una de las partes o por otras razones, y una de las partes aún reside en el estado que emitió el decreto;*

*B. (i) surge que ningún otro estado tiene jurisdicción bajo el párrafo (A), y (ii) para el mejor bienestar del menor, el tribunal de dicho estado asume jurisdicción debido a que: (I) el menor y sus padres, o el menor y al menos uno de los litigantes, tiene contactos significativos con el estado, más allá de la mera presencia física en el mismo; y (II) está disponible en ese estado evidencia sustancial relativa al cuidado, protección, entrenamiento y relaciones personales presentes o futuras del menor;*

*C. el menor está físicamente presente en ese estado, y (i) ha sido abandonado, o (ii) existe una emergencia que requiera su protección porque el niño, un hermano o uno de sus padres, ha recibido amenazas o ha estado expuesto a maltrato o abuso;*

*D.(i) surge que no hay otro estado con jurisdicción bajo los párrafos (A), (B), (C) o (E), u otro estado ha declinado ejercer jurisdicción bajo el fundamento que el estado cuya jurisdicción está en controversia es el foro más apropiado para determinar la custodia del menor, y (ii) es para el mejor bienestar del menor que ese tribunal asuma jurisdicción; o*

*E. el tribunal tiene jurisdicción continua conforme al inciso (d) de esta sección.*"

(Véase, *Santiago v. Setongo Kabuka*, 166 DPR ___ (2005), **2006 J.T.S. 1**, citando 28 USC sec.1738A(c); R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, San Juan, P.R., Facultad de Derecho Universidad Interamericana, Vol. II, 2002, pág. 1329).

Como vemos, el PKPA crea cuatro fuentes jurisdiccionales con el propósito de determinar qué estado puede ejercer jurisdicción original sobre una determinación de custodia de menores, estableciendo, al tiempo, una jerarquía o preferencia en cuanto a dichas bases jurisdiccionales. Bajo las disposiciones del estatuto federal, se le brinda prioridad al estado de residencia del menor sobre cualquiera otra de las bases jurisdiccionales antes señaladas. *Ortega v. Morales*, 131 DPR 783 (1992), citando a S.M. Schuetze, *Thompson v. Thompson: The Jurisdictional Dilemma of Child Custody Cases Under the Parental Kidnapping Prevention Act*, 16 (Nm. 2)

Pepp. L. Rev. 410 (1989). **Es decir, el tribunal del estado de residencia del menor puede declinar ejercer su jurisdicción y transferirla a otro tribunal con contactos más significativos con la causa, pero el foro con contactos significativos no puede, por iniciativa propia, ejercer jurisdicción si el estado de residencia del menor aún no ha declinado su jurisdicción**.

Para establecer la jurisdicción de un tribunal sobre determinaciones de custodia en estos casos, debemos tomar en consideración que el estado de residencia (*home state*) de un menor, acorde al PKPA, recae en "*aquel estado donde un niño ha vivido con uno o ambos padres, o con un tutor, al menos por seis meses consecutivos inmediatamente antes de la fecha en que se inicien los procedimientos.*" *Perron v. Corretjer, supra.* (Énfasis suplido).

Asimismo, la legislación federal dispone que el tribunal que establezca un decreto original de custodia conforme al PKPA, conservará jurisdicción para modificar o hacer valer dicho determinación inicial mientras las circunstancias que le brindan jurisdicción continúen. 28 USC § 1738(A) (d). Por otra parte, el estatuto permite que un tribunal modifique un decreto original de cualquier otro estado, cuando este último ya no posea jurisdicción o ha declinado asumirla. 28 USC § 1738(f) (1) (2); *Meade v. Meade,* 812 F.2d. 1473, 1477 (1987). No obstante, un tribunal no debe intervenir **si otro tribunal competente de otro estado ha ejercido su jurisdicción de manera compatible con la norma jurisdiccional establecida en el PKPA**. Recordemos que el interés del Congreso es disminuir el conflicto de jurisdicciones en casos de custodia. *Perron v. Corretjer, supra.*

Por otro lado, en 1997 se promulgó el *Uniform Child-Custody Jurisdiction and Enforcement Act,* 9 U.L.A. pág. 649 *et. seq.* (UCCJEA), el cual sustituyó el UCCJA, con el propósito de clarificar ciertas disposiciones inconsistentes contenidas en el UCCJA. Uno de los cambios más relevantes se produjo en cuanto a las bases jurisdiccionales, para emitir un decreto inicial de custodia. La disposición bajo la UCCJA autorizaba cuatro fuentes jurisdiccionales independientes, lo que constantemente provocaba choques jurisdiccionales entre los distintos foros estatales. El UCCJEA adoptó la jerarquía promulgada por la PKPA, estableciendo como fuente prioritaria la jurisdicción del estado de residencia del menor para entender en la determinación inicial de custodia. UCCJEA, sec. 201.

Para el mes de julio de 2001, el estado de Virginia adoptó el UCCJEA. Por lo tanto, bajo la Ley de Virginia, las fuentes jurisdiccionales para dictar un decreto inicial de custodia están enmarcadas dentro del esquema de prelación que originalmente se estableció bajo el PKPA y que posteriormente adoptó el UCCJEA. La sección 20-146.12 del Código de Virginia establece:

"*A. Except as otherwise provided in § 20-146.15, a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:*

*1. This Commonwealth is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth, but a parent or person acting as a parent continues to live in this Commonwealth;*

*2. A court of another state does not have jurisdiction under subdivision 1, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under § 20-146.18 or § 20-146.19, and (i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence, and (ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training, and personal relationships;*

*3. All courts having jurisdiction under subdivision 1 or 2 have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under § 20-146.18 or § 20-146.19; or*

*4. No court of any other state would have jurisdiction under the criteria specified in subdivision 1, 2, or 3.*

*B. Subsection A is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.*

*C. Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.*

(1979, c. 229, § 20-126; 2001, c. 305.)

## II

El Sr. Chico Mangual alegó, esencialmente, que el TPI incidió al asumir jurisdicción particularmente para entender en los asuntos de custodia de su hijo, el menor William Michael, luego de que el tribunal estatal de Virginia, EE.UU. había adquirido válidamente la jurisdicción sobre ambos menores. Alega, además, que el TPI erró al rehusar reconocer entera fe y crédito al decreto de custodia emitido por el Tribunal de Virginia, dentro del trámite de divorcio CM05-1485, ante dicho foro.

Por su parte, la Sra. González arguyó en su alegato que la orden provisional de custodia emitida por el Tribunal de Virginia en cuanto ambos menores era contraria a derecho en tanto y en cuanto también se refería al varón, porque cuando la misma se dictó el menor William Michael llevaba más de seis meses residiendo ininterrumpidamente en Puerto Rico junto a su madre. Por ello sostuvo que el tribunal de Puerto Rico era el foro con jurisdicción para adjudicar el decreto inicial de custodia respecto al menor William Michael.

De las constancias de autos se colige, como ya señaláramos, que los aquí litigantes establecieron su domicilio conyugal en el estado de Virginia, EE.UU., tras contraer matrimonio en Puerto Rico el 1988.

Para el 23 de junio de 2004, la Sra. González se trasladó con sus dos hijos menores hacia Puerto Rico. Sin embargo, en agosto de 2004, la niña, Francesca, regresó al estado de Virginia a residir junto a su padre, Sr. Chico Mangual; mientras que la Sra. González y su hijo William Michael se mantuvieron residiendo en Puerto Rico. El 13 de mayo de 2005, el Sr. Chico Mangual radicó demanda de divorcio ante el Tribunal de Virginia, en la que reclamó la custodia de sus dos hijos. Posteriormente (24 de junio de 205), la Sra. González radicó su demanda de divorcio ante el TPI, y también solicitó la custodia de ambos hijos.

Conforme el estado de derecho de Virginia, un tribunal estatal tendrá jurisdicción para emitir una determinación inicial de custodia si el menor reside en Virginia o ha estado allí dentro de los seis (6) meses previos al inicio del trámite. Código de Virginia, 20-146.12(A) (1). De no existir otro estado con jurisdicción bajo el acápite (1) o de este último declinar ejercer su jurisdicción, podría Virginia, entonces, asumir jurisdicción al amparo de los incisos (2), (3) y (4) de la referida sección 20-146.12 del Código.

Al momento de presentarse la demanda ante el tribunal de Virginia, el menor William Michael llevaba residiendo en Puerto Rico poco más de diez (10) meses. Por lo tanto, Puerto Rico se convirtió en el estado de residencia de William Michael. Visto únicamente desde el ángulo de la residencia de William Michael, sería forzoso concluir que el Tribunal de Virginia no cuenta con jurisdicción conforme a su propia legislación, ni al amparo de la PKPA, para entender sobre los asuntos de custodia del menor William Michael. En tal consideración el TPI rehusó a reconocer entera fe y crédito a la orden emitida por el Tribunal de Virginia en la que se otorgó provisionalmente al Sr. Chico Mangual la custodia legal y física de William Michael.

No obstante, es norma en esta jurisdicción que *"el hecho de que exista jurisdicción para juzgar un asunto de guarda de menores no justifica de por sí su ejercicio..."*. *Marrero Reyes v. García Ramírez*, 105 DPR 90 (1976) (énfasis suplido). Asumir jurisdicción siempre será adecuado si tras sopesar ciertos criterios se desprende **"que Puerto Rico constituye un foro apropiado a tales fines en las circunstancias específicas de que se trate."** *Id.*

Entre los factores a ser analizados se encuentran los siguientes:

*"...la suficiencia de la información disponible para aquilatar debidamente los hechos y formar juicio sobre el impacto del decreto que se dicte sobre la personalidad y el bienestar del menor; la sustancialidad de los contactos del foro con la controversia; el grado a que el ejercicio de jurisdicción pueda desalentar la multiplicación y prolongación de controversias sobre el asunto y contribuir a crear la estabilidad necesaria; el punto a que se tienda, como se debe tender, a evitar el secuestro unilateral de menores para fines de obtener un decreto de custodia; y el extremo en que se facilite el mayor respeto posible a las determinaciones de otros estados, así como del propio foro."*

*Marrero Reyes v. García Ramírez, supra*, a la pág. 100.

Tras un análisis ponderado de los criterios antes esbozados y ante los hechos particulares que esta causa informa, entendemos que se sirven mejor los fines de la justicia al declinar asumir jurisdicción en este caso. Veamos.

Se trata aquí de dos trámites independientes, presentados en foros judiciales distintos, en los que ambos demandantes, de forma separada, reclaman para sí la custodia de sus dos hijos.

Si bien es cierto que al amparo de la PKPA, Puerto Rico es foro con jurisdicción para entender en la determinación inicial de custodia del menor William Michael, y Virginia es foro con jurisdicción para considerar los asuntos de custodia relativos a la hermana de éste, Francesca, ello no abonaría a la realidad litigiosa de que aquí se trata de la disolución legal de un matrimonio, una pareja y una familia. Tomando lo primero como única consideración, se ventilarían ante el Tribunal de Virginia las causas de acción de divorcio, división de bienes, pensión *pendente lite* y la custodia de Francesca y en trámite por separado y ante el tribunal de Puerto Rico, se atendería la custodia de William Michael. Tomando en consideración lo segundo, procede que en un sólo foro se atienda, estudie y adjudique respecto a la custodia, sustento y relaciones filiales de ambos menores.

Entendemos que en esta causa la bifurcación procesal resulta perjudicial para todas las partes involucradas, no sólo por el costo emocional y económico que representaría para los litigantes, sino también por la prolongación y la posible disparidad de criterios que provocaría la duplicación de trámite en dos foros distintos, así como el gasto innecesario de los recursos del tribunal que significaría atender en dos foros un asunto que debe y puede ser resuelto en un sólo foro, para el beneficio de una misma familia.

Consideramos en el balance total, que el Tribunal de Virginia es el foro apropiado para dilucidar el divorcio y todo lo relacionado a la custodia y relaciones materno-paternofiliales de ambos menores. Es también factor a considerar, que fue Virginia el foro en que se inició el proceso y es .el tribunal que cuenta con y ejerce jurisdicción sobre **todos** los asuntos que atañen (divorcio-custodia, alimentos, relaciones filiales) que afecta a todos los aquí involucrados, inclusive a William Michael. Es decir, el foro de Virginia cuenta con contactos significativos en la totalidad de la causa. Es también de señalar que Virginia ha sido el lugar de residencia habitual de la Sra. González y William Michael por años, por lo que no se trata de un destino extraño, al que no están adaptados para exponer y solicitar remedios en forma adecuada.

Ante los hechos particulares que informa ésta causa, en el balance de intereses que requiere el ejercicio de nuestra discreción, consideramos correcto declinar el ejercicio de nuestra jurisdicción en cuanto al menor William Michael y transferirla o consolidarla a la jurisdicción del Tribunal de Virginia, para que dicho foro cuente con un cuadro total y completo de la situación de la familia Chico-González, antes de resolver en cuanto al divorcio, custodia de hijos, relaciones materno-paternofiliales y alimentos. Es en el Tribunal estatal de Virginia donde la Sra. González deberá presentar sus alegaciones respecto a las reclamaciones de divorcio, división de bienes, pensión *pendente lite* y **la custodia de ambos hijos, tanto de William Michael como de Francesca Chico González**.

**Dictamen**

Todas las determinaciones anteriores se hacen formar parte integral de esta sentencia.

Conforme a lo señalado, expedimos el auto de *certiorari* solicitado y revocamos la resolución y orden del 10 de enero de 2006, aquí recurrida. Resolvemos no ejercer jurisdicción en cuanto a la custodia, alimentos y relaciones paterno filiales del menor William Michael Chico González en deferencia y para que el Tribunal de Virginia pueda ejercer plena y total jurisdicción en cuanto al divorcio de los esposos Chico Mangual-González, y la custodia, relaciones materno-paternofiliales, así como alimentos, con relación a ambos menores, William Michael y Francesca, Chico-González. Para ello transferimos el ejercicio de nuestra jurisdicción sobre William Michael al Tribunal de Circuito de Virginia, para la Ciudad de Virginia Beach, Virginia, EE.UU.

Lo acordó el Tribunal y lo certifica la Secretaria.

La Juez Pabón Charneco disiente con opinión escrita.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

**VOTO DISIDENTE DE LA JUEZ PABON CHARNECO – 2006 DTA 63**

San Juan, Puerto Rico, a 28 de marzo de 2006

En el día de hoy, disentimos respetuosamente de los compañeros de Panel en su decisión de revocar el dictamen emitido por el Tribunal de Primera Instancia en el caso de autos. Mediante el mismo, dicho foro, *inter alia*, asumió jurisdicción para entender en la determinación inicial de custodia del menor William Michael Chico González.

Aunque no estamos de acuerdo con el resultado, el cual a nuestro entender se aparta de la norma esbozada por el Tribunal Supremo en estos casos, estamos contestes con los fundamentos que esgrime la Mayoría, al igual que con la relación del tracto procesal del caso, por lo que la adoptamos e incorporamos a la presente.

**I**

Las partes en el caso ante nuestra consideración contrajeron matrimonio el 26 de febrero de 1988, habiendo procreado a Francesca y a William Michael, el 2 de octubre de 1990 y el 27 de diciembre de 1991,

respectivamente. A tales efectos, William Michael cuenta al presente con 14 años de edad.

Surge de la demanda de divorcio juramentada incoada ante el Tribunal de Primera Instancia por María Mercedes González, en adelante, la recurrida, alegaciones de trato cruel y abuso físico y mental por parte de Edgar Miguel Chico Mangual, en adelante, el peticionario. La recurrida sufre de perlesía cerebral parcial, lo que se alegó no le impedía realizar las funciones propias de ama de casa. Asimismo, se planteó que el **peticionario abusaba físicamente y verbalmente de William Michael, quien tiene problemas de aprendizaje siendo diagnosticado como autista**. Lo anterior, se alegó, ha afectado severamente su progreso académico.

Alegadamente, el peticionario le señalaba a la recurrida que *"estaba cansado de bregar con personas impedidas"*. ■ El 11 de junio de 2004, hubo un incidente de violencia doméstica donde el peticionario ■ removió a la recurrida del hogar conyugal. Sobre el incidente y su secuela, se alegó:

*"...*

*15. La demandante (recurrida) fue severamente golpeada por su marido, el Demandante (peticionario) (sic), 11 de junio de 2004, quien la sacó del hogar dejándola junto con los hijos en casa de su hermano en Nueva Jersey.*

*16. Ante el deterioro físico, emocional y económico sufrido por la Demandante (recurrida), sus padres fueron a buscarla, trayéndola a Puerto Rico el 23 de junio de 2004, junto con los hijos con en (sic) consentimiento del demandado (peticionario).*

*17. A mediados de agosto de 2004, la hija menor regresó a Virginia con su padre (peticionario), ya que comenzaba el curso escolar y deseaba continuar sus estudios allá.*

*18. La Demandante (recurrida) y el menor han continuado viviendo en Puerto Rico, siéndole enviado algunas de sus pertenencias por el demandado (peticionario).*

*...".*

*Id.*

En esta etapa, cabe apuntar que las alegaciones de maltrato físico y verbal se manifestaron solamente en la recurrida y en William Michael.

En consecuencia, la recurrida solicitó, *inter alia*, la custodia de los menores, pensión alimentaria para beneficio de ambos, pensión ex-cónyuge, así como se expidiera una Orden de Protección a su favor.

Por su parte, conforme surge de autos, los procedimientos iniciados en el Estado de Virginia continuaron, otorgándosele la custodia provisional de ambos menores al peticionario.

El Tribunal de Primera Instancia en la Resolución emitida dictaminó que: *"estando William Michael residiendo en Puerto Rico, encontrándose bajo tratamiento médico y cursando estudios en una escuela especial en Puerto Rico, no se presentó evidencia que refute que los mejores intereses del menor están atendidos en Puerto Rico"*. ■ En consecuencia, dicho foro asumió jurisdicción para entender en la determinación inicial de custodia del menor William Michael. Declinó, por su parte, asumir jurisdicción sobre la determinación original de custodia de la menor, Francesca, y sobre las causas de divorcio, división de bienes y pensión *pendente lite* presentadas por la recurrida.

Insatisfecho, el peticionario presentó recurso de *certiorari* ante nos.

## · II

El Tribunal Supremo ha apuntado que *"la decisión de un tribunal, en torno a la custodia de un menor, es una a la que se debe llegar luego de realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración, **teniendo como único y principal objetivo el bienestar de los menores"**. Rivera Aponte v. Morales Martínez*, res. el 3 de marzo de 2006, **2006 J.T.S. 41**. Véase, además, *Ortiz García v. Meléndez Lugo*, res. el 3 de marzo de 2005, **2005 J.T.S. 25**; *Santana v. Osorio*, 116 D.P.R. 298, 301 (1985). *"La determinación de cuáles son los mejores intereses del menor está enmarcada en el derecho que éste tiene a una correcta formación física, moral y espiritual"*. *Rivera Aponte v. Morales Martínez, supra*.

Aun cuando el derecho de un progenitor a tener consigo a sus hijos es uno de superior jerarquía, el mismo tiene que ceder ante la facultad de *parens patriae* del Estado de salvaguardar y proteger el bienestar del menor. *Ortiz García v. Meléndez Lugo, supra*.

Decidir lo que responde al mejor bienestar del menor entraña una gran responsabilidad. A tales efectos, y a tenor con la jurisprudencia, somos de opinión que la determinación de los tribunales debe ir dirigida teniendo como norte dicho bienestar, sin otras consideraciones que puedan desviarnos del mismo. *"Cuando la decisión tiene como fundamento alegados malos tratos a ese menor, aquello que se supone grave de suyo, se torna en algo aún más complejo"*. *Pena v. Pena*, res. el 15 de junio de 2005, **2005 J.T.S. 89**.

## III

En el caso de autos, el estado residencia del menor William Michael es Puerto Rico, toda vez que, al momento de instarse la causa de autos, llevaba viviendo poco más de diez (10) meses en la Isla. Sobre el particular, la ponencia mayoritaria suscrita por el ilustrado compañero Hon. Guillermo Arbona Lago, así lo determina. Concurrimos con dicha decisión.

Sin embargo, la opinión mayoritaria dictamina y citamos:

*"...*

*Tras un análisis ponderado de los criterios antes esbozados y ante los hechos particulares que esta causa informa, entendemos que se sirven mejor los fines de la justicia al declinar asumir jurisdicción en este caso. Veamos.*

*Se trata aquí de dos trámites independientes, presentados en foros judiciales distintos,* ▮ *en los que ambos demandantes, de forma separada, reclaman para sí la custodia de sus dos hijos.*

*Si bien es cierto que al amparo de la PKPA, Puerto Rico es foro con jurisdicción para entender en la determinación inicial de custodia del menor William Michael, y Virginia es foro con jurisdicción para considerar los asuntos de custodia relativos a la hermana de éste, Francesca, ello no abonaría a la realidad litigiosa de que aquí se trata de la disolución legal de un matrimonio, una pareja y una familia....*

*Entendemos que en esta causa la bifurcación procesal resulta perjudicial para todas las partes involucradas, no sólo por el costo emocional y económico que representa para los litigantes, sino también por la prolongación y la posible disparidad de criterios que provocaría la duplicación de trámite en dos foros distintos, así como el gasto innecesario de los recursos del tribunal que significaría atender en dos foros un asunto que debe y puede ser resuelto en un solo foro, para el beneficio de una misma familia.*

..."

Véase, págs. 15 y 16 de la Sentencia.

Respetuosamente diferimos de lo anterior. Somos de opinión que consideraciones de naturaleza procesales no pueden tener supremacía sobre el mejor bienestar del menor, **a la luz de los hechos tan particulares que informa esta causa**. No podemos avalar hacer abstracción del bienestar del menor, a la luz de consideraciones económicas y/o emocionales las cuales las partes perjudicadas no han levantado. ▇ No debemos imponerle a una parte nuestra percepción particular de las posibles consecuencias de sus decisiones.

En el caso de autos, concurro con el Tribunal de Primera Instancia, al dictaminar que, mientras se dilucida su custodia, el mejor bienestar de William Michael reside en Puerto Rico. Pesa profundamente sobre nuestra decisión la edad de William Michael, un adolescente de 14 años, su condición de salud diagnosticada como *Autistic Disorder,* condición que requiere recibir servicios psiquiátricos en Puerto Rico. La consideración de estos factores es fundamental, ya que inciden sobre los mejores intereses del menor.

Al presente, William Michael recibe atención médica en Puerto Rico. De hecho, surge de autos una evaluación del Dr. Ohel Soto-Raice que señala:

*"William Chico is an adolescent with a diagnosis of Autistic Disorder. He has been under psychiatric treatment since September 20, 2004. He has received psychopharmacologic treatment with risperidone 0.25 mg twice a day. He has been able since then to decrease his impulsivity and strict pattern of behaviors to the point of being able to join the academic setting. In the academic environment, he is also going to be receiving physical therapy, occupational therapy, and speech therapy."*

Véase, pág. 79 del Apéndice.

A su vez, el menor lleva residiendo en Puerto Rico desde verano de 2004 y asiste a una escuela especial, siendo cuidado por su madre. Está recibiendo terapias física, ocupacional y del habla.

Asimismo, surge de la Resolución recurrida que la Procuradora de Familia le apuntó al tribunal *a quo* que el menor se ve contento, bien atendido y aparenta tener una muy buena relación con su siquiatra. Dicha funcionaria expresó que el menor le señaló que no deseaba irse de Puerto Rico y que *"Virginia is Hell"*. ▇

Por otro lado, durante el tiempo que el menor ha residido en Puerto Rico no han surgido alegaciones ni se ha demostrado que el cuido brindado por la recurrida era inapropiado o que éste estuviese en algún riesgo.

Somos de opinión que, a la luz de lo señalado anteriormente, remover del entorno que William Michael ha vivido durante los pasados años iría en detrimento de su condición mental y emocional. Nos preocupa, a su vez, que nada surge de autos el tratamiento que recibirá en Virginia mientras se dilucida la custodia permanente del menor. Tampoco los arreglos hechos con respecto a su cuido diario y la escuela a la que asistiría, así como sus terapias. Nótese que una vez remitido nuestro mandato, William Michael deberá ser entregado a su padre, por lo que, a nuestro entender, los señalamientos anteriores cobran relevancia.

Por último, y no menos importante, obra en autos un *Separation Agreement* ▇ preparado por la abogada del peticionario en Virginia donde éste propone la custodia compartida de los menores, permaneciendo la custodia física de William Michael, en la recurrida. Entendemos que lo anterior es demostrativo que existe intención del peticionario de no retener la custodia física de William Michael, por lo que remover al menor de la jurisdicción de Puerto Rico, en esta etapa, sería acceder a una petición que resulta incongruente con el récord ante nuestra consideración.

El tribunal *a quo*, al emitir su determinación, evaluó las circunstancias particulares del caso a la luz de la jurisprudencia. Dicho foro consideró todos los elementos relativos al bienestar físico y emocional del menor al momento de emitir su dictamen, norte a seguir en estos casos. En su Resolución, el foro de instancia evaluó el efecto que tendría el traslado sobre el efecto emocional, físico y educativo. Esta evaluación se realizó conforme los factores y criterios esbozados en el ordenamiento jurídico.

En síntesis, tomando como norte las disposiciones legales .y la jurisprudencia, el balance más racional y justiciero apunta a que el mejor bienestar del menor reside en Puerto Rico.

## IV

Por los fundamentos arriba esbozados, denegaríamos la expedición del auto solicitado, por entender que el dictamen del Tribunal de Primera Instancia es correcto en derecho.

Mildred G. Pabón Charneco
Jueza de Apelaciones