-Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| ZOYITIA EMIR COLÓN COLÓN  **Recurrida**  V.  ÁNGEL TORRES ROMERO  **Peticionario** | TA2025CE00658 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Aibonito  Civil Núm. BQ2023RF00001  Sobre: PATRIA POTESTAD – PRIVACIÓN, SUSPENSIÓN O RESTRICCIÓN |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 5 de diciembre de 2025.

El 22 de octubre de 2025, el Sr. Ángel Torres Romero (señor Torres o el peticionario) compareció ante nos mediante un *Certiorari Civil* y solicitó la revisión de una *Orden* que se dictó el 18 de septiembre de 2025 y se notificó el 22 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Aibonito (TPI). Mediante el aludido dictamen, el TPI atendió la *Moción Asumiendo Representación Legal; Solicitando se Reestablezca la Patria Potestad y Solicitando Relaciones Filiales* que presentó el peticionario y resolvió lo siguiente: "Se acepta la representación legal. No Ha Lugar. Véase Sentencia 28 de marzo de 2023, la cual es final y firme."

Por los fundamentos que expondremos a continuación, expedimos el *certiorari* y **revocamos** el dictamen recurrido únicamente en cuanto a la denegatoria de la solicitud relacionada con la patria potestad y las relaciones paternofiliales.

I.

El 9 de enero de 2023, la Sra. Zoytia Emir Colón Colón (señora Colón o la recurrida) presentó una *Petición de Privación de Patria Potestad, Facultades Tutelares y Permiso para Viajar* contra el señor Torres.[1] Alegó que, ella y el señor Torres eran los padres del menor AMTC, quien desde su nacimiento había estado bajo su custodia. Sostuvo que, aunque ambos ostentaban la patria potestad del menor, el señor Torres nunca había cumplido con sus deberes como padre. Indicó que, el señor Torres nunca había tenido al menor en su compañía, no había procurado por su educación, instrucción o salud física y mental, y no mantenía comunicación alguna con él desde hace más de tres años. Expuso que, aunque la patria potestad y la custodia implicaban obligaciones que debían ejercerse responsablemente, el padre no había demostrado interés en participar en la vida del menor.

Particularmente, esbozó que, el peticionario no asistía a la escuela, ni a citas médicas, ni a actividades extracurriculares del niño, tales como taekwondo, baloncesto o soccer. Expresó que tampoco se comunicaba con él en fechas importantes, como cumpleaños, fin de cursos o Navidad. Afirmó que la última interacción del señor Torres con el menor fue el 8 de agosto de 2019 y que desde esa fecha el padre incluso bloqueó sus medios de comunicación, dificultando que ella pudiera mantenerlo informado o solicitar autorizaciones necesarias para el menor. Asimismo, adujo que, debido a esa falta de comunicación y participación, el menor había tenido dificultades para asistir a ciertas actividades que requerían autorización del padre. Indicó que había tenido que manejar situaciones de emergencia médica sin que el peticionario se presentara o procurara por el bienestar del menor.

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.

Por otro lado, informó que el menor recientemente ganó un viaje a Estados Unidos para ver a los Orlando Magic, lo que lo llenaba de ilusión, pero para lo cual se requería la autorización del señor Torres. Ante la ausencia de este, solicitó que el Tribunal autorizara el viaje. Finalmente, pidió que se le adjudicara la patria potestad del menor, señalando que su petición era libre, voluntaria e informada, motivada por su interés en garantizar el pleno desarrollo y bienestar de su hijo.

Así las cosas, el señor Torres fue debidamente emplazado, sin embargo, no presentó su alegación responsiva en el término provisto por ley.[2] Ante ello, el 13 de febrero de 2023, la señora Colón presentó una *Moción Informativa y en Solicitud de Anotación de Rebeldía*.[3] En esta, informó que el señor Torres no había contestado la petición presentada por ella por lo que se le debía anotar la rebeldía. Atendida esta solicitud, ese mismo día, a saber, el 13 de febrero de 2025, el TPI emitió una *Orden* que se notificó el 15 de febrero de 2023 anotando en rebeldía al peticionario.[4] Además, señaló un juicio en su fondo para el 28 de marzo de 2023. Al juicio en su fondo únicamente compareció la señora Colón.[5]

Escuchada y aquilatada la prueba presentada en el juicio en su fondo, el 28 de marzo de 2023, el TPI dictó una *Sentencia* que se notificó el 30 de marzo de 2023.[6] Allí determinó que, existía evidencia clara y robusta de que el señor Torres incumplió con los derechos, deberes y responsabilidades que le imponía la patria potestad respecto a su hijo menor. Concluyó que el último contacto que el peticionario tuvo con el menor fue el 8 de agosto de 2019, y desde entonces no lo procuró, no se relacionó con él y no demostró

---

[2] *Véase*, Entrada Núm. 5, SUMAC TPI.
[3] *Véase*, Entrada Núm. 7, SUMAC TPI.
[4] *Véase*, Entrada Núm. 8, SUMAC TPI.
[5] *Véase*, Entrada Núm. 9, SUMAC TPI.
[6] *Véase*, Entrada Núm. 10, SUMAC TPI.

interés en su desarrollo físico, emocional, escolar o médico, caracterizándose como un padre ausente.

En vista de lo anterior, expuso que, conforme al Art. 589 del Código Civil de 2020, 31 LPRA sec. 7241, la patria potestad era un conjunto de deberes y derechos que debían ejercerse responsablemente. Además, señaló que, el Art. 593 del Código Civil de 2020, 31 LPRA sec. 7252, disponía que ambos progenitores debían ejercerla con paridad, aunque uno podía ejercerla de manera exclusiva mediante consentimiento o decreto judicial. De igual forma citó el Art. 615 del Código Civil de 2020, 31 LPRA sec. 7322, que establecía causas para privar de patria potestad, destacando los incisos referentes a faltar a los deberes inherentes a la patria potestad y a no mantener contacto o comunicación regular con el menor.

A la luz de estos fundamentos, declaró con lugar la solicitud presentada por la recurrida y privó al señor Torres de la patria potestad. Así pues, le concedió a la señora Colón el ejercicio exclusivo de la patria potestad para tomar decisiones relacionadas con su hijo y realizar trámites ante agencias estatales y federales, incluyendo la obtención de documentos de identificación. Finalmente, dispuso que se mantenía la responsabilidad del padre respecto al pago de la pensión alimentaria.

Posteriormente, el 8 de junio de 2023, el señor Torres presentó un escrito solicitando que se aceptara a la Lcda. Niorly Y. Mendoza como su representación legal.[7] El 9 de junio de 2023, el TPI dictó una *Orden*, notificada el 13 de junio de 2023, mediante la cual aceptó dicha representación legal.[8] Sin embargo, no se realizó gestión procesal alguna hasta el 3 de febrero de 2025, fecha en la

---

[7] *Véase*, Entrada Núm. 11, SUMAC TPI.
[8] *Véase*, Entrada Núm. 12, SUMAC TPI.

que el señor Torres presentó una *Moción por Derecho Propio*.[9] En esta, alegó que no fue debidamente citado en el caso de autos debido a un presunto error en la dirección postal consignada en las notificaciones. Sostuvo que se enteró de la existencia del presente caso cuando acudió al TPI para indagar sobre el caso civil núm. AI2022RF00401, relacionado con patria potestad y relaciones paternofiliales, que él mismo presentó el 16 de diciembre de 2022. Asimismo, afirmó que era falso que hubiese abandonado a su hijo y señaló que en el caso núm. AI2022RF00401 constantemente manifestó su deseo de mantener una relación con él.

Por otro lado, indicó que la señora Colón lo privó de ver al menor desde que él inició una relación amorosa con otra persona. También alegó que intentó contratar a una abogada, pero que ya era demasiado tarde para cumplir con la citación del 15 de febrero de 2023. Finalmente, solicitó al TPI que restableciera su derecho a mantener una relación con su hijo y proveyó una dirección postal corregida.

Atendida la referida moción, el 4 de febrero de 2025, el TPI emitió una *Orden*, notificada el 7 de febrero de 2025, en la que expuso: "Nada que proveer".[10] Posteriormente, el 24 de agosto de 2025, el peticionario presentó una *Moción Asumiendo Representación Legal; Solicitando se Reestablezca la Patria Potestad y Solicitando Relaciones Filiales*.[11] En lo pertinente, solicitó que se le restableciera la patria potestad de su hijo menor, y que se establecieran relaciones paterno filiales, alegando que no contó con una representación legal adecuada en el procedimiento donde fue privado de la patria potestad. Expuso que fue emplazado y que, a través de la Frente Unido de Policías Organizados, realizó gestiones

---

[9] *Véase*, Entrada Núm. 16, SUMAC TPI.
[10] *Véase*, Entrada Núm. 17, SUMAC TPI.
[11] *Véase*, Entrada Núm. 18, SUMAC TPI.

para ser representado por la licenciada Mendoza. Además, adujo que, aunque llegó al tribunal el día del juicio en su fondo, no pudo entrar a sala porque la vista había comenzado y el alguacil no le permitió el acceso. Sostuvo que para esa fecha ya había contratado a la licenciada Mendoza, pero que esta no asumió su representación legal hasta después de que el Tribunal emitió su determinación.

Manifestó que tenía interés en recuperar sus derechos como padre con patria potestad y en que se establecieran relaciones paternofiliales con el menor. Además, citó jurisprudencia que establecía que las sentencias en asuntos de patria potestad y custodia no constituían cosa juzgada y podían reexaminarse si las circunstancias habían cambiado. Reconoció que no compareció al proceso de privación, pero afirmó que no fue orientado ni estuvo adecuadamente representado.

Argumentó que en el caso de autos no se demostró lo requerido por el Art. 615 del Código Civil de 2020, *supra*, y que no se probó que él no era un padre presente, por lo que procuró la restitución de la patria potestad. Alegó que la *Sentencia* del Tribunal no especificó si la privación era temporal o permanente, por lo que entiende que debió presumirse que fue temporal. También planteó que el Tribunal debió inicialmente considerar una suspensión y luego determinar si procedía una privación, lo que le habría permitido demostrar su interés en cumplir con sus responsabilidades parentales. Citó el Art. 614 del Código Civil de 2020, 31 LPRA sec. 7321, que establece que la privación podía ser temporal o permanente y requería un interés apremiante del Estado y la inexistencia de un medio menos oneroso.

Finalmente, indicó que deseaba relacionarse con el menor según dispusiera el Tribunal y que el bienestar del niño requería la presencia de ambos padres. Alegó que ocurrió alienación parental que dañó su relación con el menor, y señaló que había continuado

cumpliendo con la manutención pese a la privación de patria potestad. En consecuencia, solicitó que se le restableciera la patria potestad y las relaciones paternofiliales.

El 18 de septiembre de 2025, el TPI dictó una *Orden* que se notificó el 22 de septiembre de 2025 en la cual atendió la *Moción Asumiendo Representación Legal; Solicitando se Reestablezca la Patria Potestad y Solicitando Relaciones Filiales* que presentó el peticionario y resolvió lo siguiente: "Se acepta la representación legal. No Ha Lugar. Véase Sentencia 28 de marzo de 2023, la cual es final y firme."[12] En desacuerdo con esta determinación, el 22 de octubre de 2025, el señor Torres presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Tribunal de Primera Instancia, Sala Superior de Aibonito al no determinar si la privación de patria potestad era temporera o permanente.**

> **Erró el Tribunal de Primera Instancia, Sala Superior de Aibonito, y abusó de su discreción al no llevar a cabo una vista para determinar si procede el restablecimiento de la patria potestad.**

> **Erró el Tribunal de Primera Instancia, Sala Superior de Aibonito, y abusó de su discreción al no atender la solicitud de relaciones paternofiliales del peticionario.**

Atendido el recurso, le concedimos a la parte recurrida hasta el 3 de noviembre de 2025 para presentar su postura. Sin embargo, la señora Colón solicitó una prórroga y se le concedió. Así pues, le concedimos hasta el 24 de noviembre de 2025 para expresarse en cuanto al recurso. Oportunamente, la recurrida presentó un escrito intitulado *Alegato de la Parte Recurrida* y negó que el TPI cometiera los errores que el señor Torres le imputó. Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

---

[12] *Véase*, Entrada Núm. 19, SUMAC TPI.

## II.

### -A-

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 59-60, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* es determinante por sí solo para el ejercicio de jurisdicción, y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra. La norma vigente es que un tribunal apelativo solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

**-B-**

En *Torres, Ex Parte*, 118 DPR 469, 477 (1987), el Tribunal Supremo definió la custodia como "la tenencia o control físico que tiene un progenitor sobre sus hijos". Asimismo, aclaró que la custodia era un componente esencial de la patria potestad, obligación primaria que le imponía a los padres el deber de tener a sus hijos no emancipados en su compañía. Íd., pág. 476. Esta premisa guarda armonía con el Art. 589 del Código Civil de 2020, 31 LPRA sec. 7241, el cual dispone que la patria potestad constituye el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de sus hijos desde su nacimiento hasta la mayoría de edad o emancipación.

Ahora bien, ningún derecho fundamental es absoluto. *Rexach v. Ramírez,* 162 DPR 130, 147 (2004). En ese sentido, "los derechos de los padres pueden limitarse con el propósito de proteger un interés apremiante del Estado, como lo es [el] bienestar de los menores". Íd. En el marco de su función *parens patriae*, el Estado —a través de los tribunales— puede privar, suspender o restringir la custodia y la patria potestad cuando los progenitores no satisfacen las necesidades del menor. Íd. Esta facultad fue confirmada en *Pena v. Pena,* 164 DPR 949, 959 (2005), donde se reiteró que la función *parens patriae* se ejerce mediante la determinación judicial de a quién corresponde la custodia, tras un análisis objetivo y ponderado de todos los hechos relevantes, teniendo como único norte el mejor interés y bienestar del menor. Íd. En consecuencia, los tribunales que atienden controversias de custodia o patria potestad "no pueden actuar livianamente", y deben contar con la información más completa y variada posible para adjudicar correctamente. Íd.

Este marco normativo es reforzado por diversas disposiciones del Código Civil de 2020. El Art. 608 del referido estatuto, 31 LPRA

sec. 7301, establece que la suspensión o privación de la patria potestad solo puede decretarse judicialmente, y únicamente si el Estado demuestra un interés apremiante mediante prueba "clara, robusta y convincente", además de probar que no existe un medio menos oneroso que la privación para salvaguardar el bienestar del menor. Por su parte, el Art. 615 del Código Civil de 2020, 31 LPRA sec. 7322, enumera las causas que justifican una privación, incluyendo: faltar a los deberes o dejar de ejercer las facultades de la patria potestad y no visitar al menor ni mantener contacto o comunicación regular con este o con la persona que ostenta su custodia de jure o de facto, salvo que el progenitor esté impedido por reclusión o residencia fuera de Puerto Rico. Finalmente, el Art. 610 del Código Civil de 2020, 31 LPRA sec. 7303, reconoce que, una vez extinguida la causa que motivó la privación, el progenitor conserva el derecho a solicitar la restitución del ejercicio de la patria potestad, salvo que la privación haya sido irreversible.

Por otro lado, aunque las determinaciones de custodia no constituyen cosa juzgada, sí crean un estado de derecho que, "salvo circunstancias extraordinarias, no debe ser alterado sumariamente". *Santana Medrano v. Acevedo Osorio*, 116 DPR 298, 301 (1985). Si bien en situaciones de emergencia es posible emitir decretos provisionales sin vista, el procedimiento ordinario requiere que se garantice el debido proceso de ley, permitiendo a las partes comparecer y ser oídas. R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, Vol. II, pág. 1326, citando *Perron v. Corretjer*, 113 DPR 593 (1982).

III.

Discutiremos los tres señalamientos de error en conjunto pues todos giran alrededor de una misma controversia jurídica: la actuación del TPI al denegar la solicitud del señor Torres para que se evaluara el restablecimiento de la patria potestad y el

establecimiento de relaciones paternofiliales, sin celebrar vista y sin determinar si la privación decretada en el año 2023 era de carácter temporero o permanente. Es importante destacar que, mediante este dictamen no estamos cuestionando la validez la *Sentencia* dictada el 28 de marzo de 2023, la cual se reconoce como válida, final y firme. Lo que el peticionario plantea es que, conforme al marco normativo vigente y las alegadas variaciones en las circunstancias, el TPI tenía la obligación legal y constitucional de evaluar la solicitud presentada el 24 de agosto de 2025 mediante una vista adecuada, conforme al debido proceso de ley.

La *Sentencia* del 28 de marzo de 2023 privó al señor Torres de la patria potestad, pero no indicó si dicha privación era temporera o permanente, a pesar de que el Código Civil de 2020 expresamente distingue entre ambas modalidades. Particularmente, el Art. 614 del Código Civil de 2020, 31 LPRA sec. 7321, permite tanto la privación temporera como la permanente, y exige que, para cualquiera de ellas, el Estado demuestre un interés apremiante y la inexistencia de un medio menos oneroso. Por su parte, el Art. 610 del Código Civil de 2020, *supra*, establece que, una vez cese la causa que motivó la privación, el progenitor conservará el derecho a solicitar la restitución, salvo que la privación haya sido irreversible.

Ante este marco normativo, y en ausencia de una declaración expresa de irreversibilidad, el TPI tenía el deber de considerar la solicitud presentada el 24 de agosto de 2025 como un pedido de restitución, lo que requería un examen judicial actualizado. Al limitarse a denegarla mediante una escueta referencia a la *Sentencia* original, el Tribunal omitió realizar una determinación esencial que debía preceder cualquier rechazo. Es decir, el TPI debió definir el carácter de la privación decretada en el año 2023 y evaluar si el peticionario tenía derecho a que su reclamación fuera examinada conforme a derecho.

Aun reconociendo la legitimidad de la *Sentencia* del 28 de marzo de 2023, los principios legales y jurisprudenciales aplicables imponen que las solicitudes de restitución de patria potestad sean evaluadas mediante vista. La doctrina reiterada en *Torres, Ex Parte,* supra; *Rexach v. Ramírez,* supra; y *Pena v. Pena,* supra, destaca que el Estado, en su función *parens patriae,* debe tomar decisiones sobre el bienestar de menores con la mayor cautela y únicamente con información completa y confiable. La celebración de una vista es indispensable para recopilar esa información y para garantizar a las partes la oportunidad de presentar prueba, ser oídas y refutar cualquier alegación. La solicitud del señor Torres —que pretendía provocar una evaluación nueva conforme a los Arts. 610 y 614 del Código Civil de 2020, supra— requería determinar si las circunstancias que motivaron la privación aún persistían y si el bienestar del menor favorecía algún tipo de reestablecimiento parcial o total. Nada de esto podía resolverse mediante una mera referencia a la *Sentencia* del 28 de marzo de 2023, la cual adjudicó hechos y circunstancias ya pasadas. El TPI, por ende, abusó de su discreción al resolver sin vista y sin actualización probatoria.

Además, la solicitud del señor Torres incluía expresamente un planteamiento sobre el establecimiento de relaciones paternofiliales. La patria potestad, la custodia y el régimen de relaciones filiales son instituciones jurídicas distintas, y la pérdida de una no implica necesariamente la eliminación de las demás. Un progenitor privado de patria potestad puede, en determinadas circunstancias, tener derecho a un régimen de relaciones filiales si ello beneficia al menor. La *Orden* recurrida, sin embargo, no abordó este planteamiento y lo rechazó sin evaluación ni análisis, en contravención del debido proceso y del principio rector de que toda decisión relativa a un menor debe fundarse exclusivamente en su mejor bienestar. La

eliminación o negación de un régimen de comunicaciones requiere evaluación judicial individualizada, no una denegatoria automática.

En síntesis, los errores señalados se cometieron ya que: (1) el TPI nunca determinó si la privación decretada en el año 2023 era temporera o permanente, una determinación necesaria para evaluar la solicitud de restitución; (2) denegó la solicitud del peticionario sin celebrar una vista, pese a que la ley y la jurisprudencia lo exigían para adjudicar una reclamación de restitución de patria potestad y para determinar si habían cambiado las circunstancias; y (3) no atendió adecuadamente la solicitud de establecer relaciones paternofiliales, la cual debía evaluarse de manera separada y mediante una valoración del mejor interés del menor.

Por estas razones, procede concluir que el TPI erró y abusó de su discreción al denegar la solicitud del señor Torres sin cumplir con el debido proceso de ley ni con su responsabilidad de evaluar el bienestar del menor a la luz de circunstancias actuales. En vista de lo anterior, ordenamos la celebración de una vista para que de manera adecuada y conforme al derecho vigente, se atienda tanto la petición de restitución de patria potestad como la solicitud de establecimiento de relaciones paternofiliales del señor Torres.

### IV.

Por los fundamentos que expondremos a continuación, expedimos el *certiorari* y **revocamos** el dictamen recurrido únicamente en cuanto a la denegatoria de la solicitud relacionada con la patria potestad y las relaciones paternofiliales. Además, ordenamos que se proceda conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones